Reuven L. Cohen (Bar No. 231915)
Email: rcohen@cohen-williams.com
**COHEN WILLIAMS LLP**
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Defendant
JUAN CARLOS SERESI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-89-190-SVW |
| Plaintiff, | **MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A); DECLARATION OF COUNSEL; EXHIBITS.** |
| v. | |
| JUAN CARLOS SERESI, | [Proposed] Order filed concurrently herewith |
| Defendant. | |

Defendant Juan Carlos Seresi, by and through his appointed counsel of record, Reuven L. Cohen, hereby moves this court pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act for a reduction in sentence to time served.  This motion is based on the attached memorandum of points and authorities, all files and records in this case, and such further information as may be presented to the Court with respect to this motion.

Respectfully Submitted,
COHEN WILLIAMS LLP

Dated:  September 14, 2020          By:  _/s/ Reuven L. Cohen_____
                                                  Reuven L. Cohen

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. PROCEDURAL HISTORY ............................................................................ 2

III. ARGUMENT ............................................................................................... 2

    A.    Legal Standards. ................................................................................. 3

    B.    Mr. Seresi Merits Compassionate Release. ....................................... 4

        1.    The nature and circumstances of Mr. Seresi's offense weigh in favor of relief. ............................................................................................. 5

        2.    Mr. Seresi's history and characteristics weigh in favor of relief. ......... 8

            a.    Mr. Seresi's age and health weigh in favor of relief. ................. 8

            b.    Mr. Seresi's characteristics weigh in favor of relief. .............. 10

        3.    The balance of the § 3553(a) factors weigh in favor of relief. ............ 11

            a.    Mr. Seresi's significant term of incarceration satisfies the sentencing goals of deterrence. .................................................. 11

            b.    Release will best provide Mr. Seresi with necessary medical care. ............................................................................................. 12

            c.    The need to avoid unwarranted sentencing disparities weighs in favor of Mr. Seresi's early release. ........................................... 12

            d.    Post-*Booker*, Mr. Seresi would face a significantly less severe sentence. ...................................................................................... 13

        4.    Mr. Seresi poses no danger to his community. .................................... 15

    C.    Mr. Seresi has a well-established release plan. ................................. 16

IV. CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*
 552 U.S. 38 (2007) ........................................................................... 12

*Jones v. United States*
 431 F.Supp.3d 740 (E.D. Va. 2020) ............................................... 13

*Pepper v. United States*
 562 U.S. 476 (2011) ........................................................................... 7

*United States v Parker*
 —— F.Supp.3d ——, 2020 WL 2572525 (C.D. Cal 2020) ........................................ *passim*

*United States v. Andonian*
 29 F.3d 634 (9th Cir. 1994) ................................................................. 6

*United States v. Arreola-Bretado*
 445 F.Supp.3d 1154 (S.D. Cal. 2020) ................................................. 6

*United States v. Ayon-Nunez*
 No. 1:16-cr-00130-DAD, 2020 WL 704785 (E.D. Cal. Feb. 12, 2020) ........................... 3

*United States v. Booker*
 543 U.S. 220 (2005) .......................................................................... 13

*United States v. Brown*
 —— F.Supp.3d ——, ——, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020) .............. 7, 12

*United States v. Decator*
 —— F.Supp.3d ——, ——, 2020 WL 1676219 (D. Md. Apr. 6, 2020) ........................... 7

*United States v. Esparza*
 No. 1:07-cr-00294-BLW, 2020 WL 1696084 (D. Idaho Apr. 7, 2020) ........................... 3

*United States v. Gonzalez*
 —— F.Supp.3d ——, 2020 WL 1536155 (E.D. Wa. 2020) ................................. 3, 9

*United States v. Marks*
 No. 03-cr-06033-L, —— F.Supp.3d ——, 2020 WL 1908911 (W.D.N.Y. Apr. 20, 2020)
 ..................................................................................... 3, 16

*United States v. Mondaca*
 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) ............................................ 11, 16

*United States v. Perez*
 No. 88-cr-10094-JTM, 2020 WL 1180719 (D. Kan. Mar. 11, 2020) ........................... 7

*United States v. Redd*
 —— F.Supp.3d ——, 2020 WL 12484930 (E.D. Va. Mar. 16, 2020) ..................... 7, 12

*United States v. Rodriguez*
 424 F. Supp. 3d 674 (N.D. Cal. 2019) ............................................... 3, 9

**MOTION FOR COMPASSIONATE RELEASE**

*United States v. Stanback*
  377 F. Supp. 3d 618 (W.D. Va. 2019) .......................................................... 14

*United States v. Waddell*
  No. 1:09-cr-00435-LO (E.D. Va. Aug. 4, 2020) .......................................... 9

*United States v. Williams*
  2020 WL 1751545 (N.D. Fla. Apr. 1, 2020) ................................................ 16

*United States v. Willis*
  382 F. Supp. 3d 1185 (D.N.M. 2019) ........................................................... 3

## STATUTES

18 U.S.C. § 3553(a) ............................................................................ 4, 12, 13

18 U.S.C. § 3582(c) ..................................................................................... 4

18 U.S.C. § 3582(c)(1)(A) ....................................................................... 1, 3

18 U.S.C. § 3582(c)(1)(A)(i) ...................................................................... 2

First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ........... 2

S. Rep. 98-225, 121, 1984 U.S.C.C.A.N. 3182, 3304 ................................. 2

## SENTENCING GUIDELINES

U.S.S.G. § 1B1.13 ....................................................................................... 4

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  <u>INTRODUCTION</u>

Juan Carlos Seresi is a 73-year-old man who has served over 31 years of a 505-year sentence.  During this time, he has made valiant efforts to become a better man.  He has earned three associate's degrees, although he had little hope of ever putting his skills towards gainful employment.  He has successfully completed approximately 85 educational and service-oriented courses, though doing so stood no chance of meaningfully reducing his time in custody.  He has maintained a close and loving relationship with his children, and his many grandchildren, who have never known him outside a prison's walls.  He has proven himself to be a kind and dedicated person, one who has pursued rehabilitation for its own sake – not a recalcitrant criminal incapable of change.

Mr. Seresi does not deserve to die in prison, and he need not.  Compassionate release is amply justified in this case.  Indeed, Mr. Seresi is clearly eligible for relief because he is over age 70 and has served more than 30 years of his sentence.  Neither the government nor the Bureau of Prisons ("BOP") disagrees.

The sole questions before this Court, therefore, are whether Mr. Seresi poses a danger to his community, as set forth in 18 U.S.C. § 3142(g), and whether the § 3553(a) factors weigh in favor of release.  *See* 18 U.S.C. § 3582(c)(1)(A).  Simply put, Mr. Seresi poses no danger to anyone, and each factor favors a reduction in his sentence to time served.  Mr. Seresi is a first-time, non-violent offender with an exemplary prison record, who has taken extraordinary steps to rehabilitate himself.  He is also an elderly man who suffers from a host of medical conditions, which together make him particularly vulnerable to severe illness or death if infected with the COVID-19 virus, further reducing his already-negligible chance of recidivism.  Moreover, the sheer length of the sentence served to date – the majority of Mr. Seresi's adult life – is sufficient to deter his future criminal conduct, and to send the strongest possible message of general deterrence.  Finally, upon release, Mr. Seresi is fortunate to count upon the support of his family, who will open their home to

**MOTION FOR COMPASSIONATE RELEASE**

him. Each of these facts weighs heavily against a finding of dangerousness and in favor of Mr. Seresi's compassionate release.

For these, and the reasons further detailed herein, Mr. Seresi respectfully requests that the Court grant the instant motion, and reduce his sentence to time-served.

## II. **PROCEDURAL HISTORY**

On August 21, 1991, Mr. Seresi was sentenced to 505 years in prison under the then-mandatory Federal Sentencing Guidelines. On June 24, 2019, Mr. Seresi submitted a request, pursuant to 18 U.S.C. § 3582(c)(1)(A) and Program Statement 5050.50, to the Warden of the Los Angeles Metropolitan Detention Center for a recommendation that the Bureau of Prisons ("BOP") file a motion for compassionate release on his behalf. *See* Declaration of Reuven L. Cohen ("Cohen Decl.") at ¶ 2, Exhibit 1. On August 5, 2020, more than a year later, the BOP denied Mr. Seresi's request. *See* Cohen Decl., ¶ 2, Exhibit 2. In a letter informing Mr. Seresi of that decision, the BOP's Office of General Counsel stated that Mr. Seresi "meets the criteria for a reduction in sentence," but that he would not be granted such a reduction because "doing so would minimize the severity of his criminal conduct" and because Mr. Seresi is subject to an immigration detainer.[1] (*Id.*)

As Mr. Seresi's administrative remedies are now exhausted, pursuant to the First Step Act, he brings his motion directly to the Court. *See* 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

## III. **ARGUMENT**

The passage of the First Step Act in 2018 has broadened the scope of compassionate release and returned sentencing power to the judiciary, "where it belongs." S. Rep. 98-225, 121, 1984 U.S.C.C.A.N. 3182, 3304. Because Mr. Seresi satisfies the statutory criteria for relief, and all discretionary factors weigh in favor of release, the Court should grant his motion forthwith.

---

[1] Mr. Seresi is a native and citizen of Argentina. He has chosen to pursue the instant motion although he may face deportation upon release from BOP custody.

## A.   Legal Standards.

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons…." *United States v. Esparza*, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But, on December 21, 2018, Congress enacted—and the President signed into law—the First Step Act of 2018 ("the FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Marks*, No. 03-cr-06033-L, —— F.Supp.3d ——, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." *Willis*, 382 F. Supp. 3d at 1187. To qualify for a reduction in sentence, the petitioner must, as "a threshold matter," exhaust his administrative remedies. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019). Following exhaustion, "[a] defendant may be eligible for compassionate release: (1) if the Court finds 'extraordinary or compelling reasons' to warrant a sentence reduction; *or* (2) if the defendant is at least 70 years old, has served at least 30 years in prison pursuant to a sentence imposed for the offense for which the defendant is currently imprisoned, and the defendant is determined not to pose a risk of danger to the community." *United States v. Gonzalez*, —— F.Supp.3d ——, 2020 WL 1536155, at *2 (E.D. Wa. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)) (emphasis added). "Under either eligibility prong, the Court must also find that a sentence reduction is 'consistent with applicable policy statements issued by the [United States] Sentencing Commission.'" *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)). "The Sentencing Guidelines," in turn, "instruct that the Court should consider the sentencing factors set forth in 18 U.S.C. §

3553(a) when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *Id.* (citing U.S.S.G. § 1B1.13).

As outlined below, each and every one of these requirements is met.

**B.    Mr. Seresi Merits Compassionate Release.**

As discussed above, Mr. Seresi has fully exhausted his administrative remedies: he petitioned for compassionate release and the Bureau of Prisons' Office of General Counsel in Washington D.C. denied that request. *See* Cohen Decl., ¶ 2, Exhibit 2.  Mr. Seresi also clearly satisfies the statutory criteria for compassionate release set forth in § 3582(c) because he is more than 70 years old and has served more than 30 years of his sentence.[2] *Id.*  The BOP agrees.  *See id.*

It bears mentioning at the outset, moreover, that the BOP denied Mr. Seresi's request for compassionate release in reliance upon inapposite criteria.  The BOP did *not* find that Mr. Seresi's release from custody would pose a danger to another person or to his community.  Instead, the BOP relied upon Mr. Seresi's undocumented immigration status, and its assessment that his release would "minimize the severity of the offense …." *Id.* But, neither the inmate's immigration status, nor whether release would "minimize" an offender's misconduct is a factor for consideration under the statutory scheme.  *See* 18 U.S.C. § 3582(c); 18 U.S.C. § 3553(a); U.S.S.G. § 1B1.13.

When this Court instead considers the legally relevant factors – namely, whether Mr. Seresi poses a danger to others, and whether the § 3553(a) factors weigh in favor of relief – Mr. Seresi's release is amply justified.

---

[2] To the extent that the Court finds Mr. Seresi is not eligible under § 3582(c)(1)(A)(ii), he qualifies for compassionate release under § 3582(c)(1)(A)(i) because extraordinary and compelling reasons justify relief.  Each of these reasons – namely, his advanced age and failing health, and his vulnerability to severe illness or death from COVID-19 – is discussed in detail herein.

**1.      The nature and circumstances of Mr. Seresi's offense weigh in favor of relief.**

It is beyond dispute that the offense of conviction was Mr. Seresi's first, and that he has no history of violence and no criminal history.  As discussed below, moreover, the record reflects that Mr. Seresi was a minor participant in the charged conspiracy and did not financially benefit from the scheme.

As the Court is well aware, the criminal conspiracy charged in *United States v. Andonian* (the "Andonian Conspiracy") was a vast, complex scheme that took place over a number of years.  Compared to his co-defendants, the cooperating witnesses, and unindicted co-conspirators, Mr. Seresi was a minor player and was only involved for a short time.[3]  The Andonian Conspiracy began in 1985.  (Presentence Report "PSR" at ¶ 34.)  RAOF, a jewelry business owned by co-defendant Raul Vivas, was incorporated in 1986.  (PSR, ¶ 59.)  Mr. Seresi was employed by RAOF as a bookkeeper from February 1987 until December 1988.  (PSR, ¶ 149.)  He earned $700 per week.  (*Id*.)  In his role as a bookkeeper, Mr. Seresi collected, counted, and recorded incoming and outgoing payments to and from RAOF and delivered gold.  (PSR, ¶ 150.)  After Raul Vivas left the country in late 1988, Mr. Seresi opened J.C. Jewelers and continued to collect and record payments as directed by Mr. Vivas and Mr. Iglesias.

At all times during the course of his employment, Mr. Seresi acted at the direction of his superiors, Raul Vivas and Tomas Iglesias.  He had no underlings, managed no one, and had little, if any, authority to make independent decisions.  (Sentencing Tr., Vol. 1, 94:4-95:2, 98:15-99:5.)  In recognition of these facts, at sentencing, when the court structured the hearing pursuant to the case's "hierarchy of criminality," Mr. Seresi was second, meaning he was the *least* culpable of the four defendants that received 505-year sentences,

---

[3] With all due respect to the Court, Mr. Seresi maintains his contention, as detailed in his motion pursuant to 28 U.S.C. § 2255 (Dkts. 1275, 1277, and 1311-1), that *Brady* and 404(b) evidence was wrongly introduced against him, which clouds the evaluation of his culpability and role in the conspiracy.

**MOTION FOR COMPASSIONATE RELEASE**

and second least culpable in the entire Andonian Conspiracy.  (Sentencing Tr., Vol. 1, 27:1-7.)

In addition, the record demonstrates that Mr. Seresi did not benefit financially from the scheme.  *See United States v. Andonian*, 29 F.3d 634, *11 (9th Cir. 1994) (noting that Mr. Seresi "was not personally involved in handling all of the funds") and Dkt. 1348-17 at 3 (noting that the record contains no evidence that Mr. Seresi was involved with, or could have reasonably foreseen, shipments of proceeds from New York to Los Angeles.)  In fact, at sentencing, the court found him unable to pay a fine or the costs of imprisonment. (Sentencing Tr., Vol. 2, 193:14-194:1) (noting that, "[Mr. Seresi], apparently, is a man of rather modest means, and he has two [sic] young children and again a modest residence.")

The nature and circumstances of Mr. Seresi's offense – including its non-violent nature, and Mr. Seresi's comparatively minor role – thus weigh in favor of compassionate release.  *See United States v. Arreola-Bretado*, 445 F.Supp.3d 1154, 1154 (S.D. Cal. 2020) (granting compassionate release to defendant convicted of importation of methamphetamine and noting that the nature and circumstances of the offense weighed in favor of relief because the defendant "is a nonviolent offender" and "[s]he has no prior record").

A recent decision from this district lends ample support for this conclusion.  In *United States v. Parker*, the court adjudicated a claim for compassionate release made by an elderly inmate serving a life sentence, who stood convicted for his lead role in a massive narcotics conspiracy wherein he and his fellow law enforcement officers executed false "search warrants" upon drug stash houses and robbed drug dealers of cash, weapons, and narcotics.  ⸻ F.Supp.3d ⸻, 2020 WL 2572525 (C.D. Cal 2020).  The government vehemently opposed compassionate release in light of the nature and circumstances of the offense, noting, *inter alia*, that the defendant abused a position of trust, that the defendant "was the ringleader of a significant drug conspiracy that had far-reaching effects," and that the defendant "had the capacity to, and was prepared to, engage in violent acts if necessary to further his drug trafficking activity."  *Id.*, at *11.  While the court agreed that the

**MOTION FOR COMPASSIONATE RELEASE**

defendant's offense conduct was undoubtedly "serious," the court noted that "'evidence of postsentencing rehabilitation may plainly be relevant'" and "'[s]everal courts have … considered a defendant's rehabilitation in granting compassionate release.'" *Id.* (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011) and *United States v. Brown*, ⸺ F.Supp.3d ⸺, ⸺, 2020 WL 2091802, at *7 (S.D. Iowa Apr. 29, 2020)).  The court therefore ultimately concluded that the nature and circumstances of the offense weighed in *favor* of compassionate release, in light of the defendant's laudable efforts at rehabilitation, which included earning two associate's degrees, completing numerous certificate programs, and holding several jobs. *Id.*

Mr. Seresi presents a case on all fours.  During his term of incarceration, Mr. Seresi has earned three associate's degrees – in Social & Behavioral Sciences, in Arts & Humanities, and in American Studies – as well as a Legal Assistant/Paralegal Certificate. He has also successfully completed approximately 85 educational and service-oriented courses. *See* Cohen Decl., ¶ 4, Exhibit 3.  Like in *Parker*, therefore, Mr. Seresi's laudable efforts at rehabilitation weigh in favor of compassionate release. *See id*; *see also United States v. Decator*,⸺ F.Supp.3d ⸺, ⸺, 2020 WL 1676219, at *4 (D. Md. Apr. 6, 2020) (finding that § 3553(a)(1) factor favored compassionate release because, *inter alia*, "[w]hile incarcerated, Decator has participated in extensive education and rehabilitative programming; he has participated in over 1,500 hours of programming and has completed more than 70 courses"); *United States v. Redd*, ⸺ F.Supp.3d ⸺, 2020 WL 1248493, at *10 (E.D. Va. Mar. 16, 2020) (finding that inmate's evidence of rehabilitation favored sentence reduction because inmate "has demonstrated a commitment to self-improvement, devoting hundreds of hours to vocational programs, assisting others in their rehabilitative efforts, exhibiting solid work habits, [and] caring for mental health inmates"); *United States v. Perez*, No. 88-cr-10094-JTM, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020) (finding that inmate's rehabilitation favored compassionate release where inmate "gained his GED while in prison and has availed himself of various educational programs.").

**MOTION FOR COMPASSIONATE RELEASE**

For all of these reasons, the nature and circumstances of Mr. Seresi's offense, when viewed in light of his substantial rehabilitative efforts, weigh in favor of relief.

### 2.    Mr. Seresi's history and characteristics weigh in favor of relief.

#### a.    Mr. Seresi's age and health weigh in favor of relief.

Mr. Seresi is both elderly and infirm.  He suffers from several degenerative conditions, including high blood pressure, gout, arthritis, hearing loss, cataracts, and macular degeneration.  *See* Cohen Decl., ¶ 3.  His failing health alone weighs in favor of compassionate release.  *See Parker*, 2020 WL 2572525 at *9 (noting that defendant's advanced age and "diabetes, arthritis, and hypertension" were considerations justifying compassionate release).

Moreover, Mr. Seresi faces additional, severe risk in light on the ongoing COVID-19 pandemic.  Indeed, the COVID-19 pandemic presents a dramatic and unprecedented threat to incarcerated individuals.  The consensus among public health and legal experts is that prisons are uniquely ill-situated to handle the current pandemic.[4]

Experts' concerns are far from hypothetical.  COVID-19 is now growing inside the Bureau of Prisons at a rate exponentially greater than among the population at large.  7.68% of incarcerated individuals have been confirmed positive for COVID-19 compared to 1.49% of the U.S. population.[5]  The infection rate inside the BOP is 5.15 times higher than that of the United States.[6]  114 federal inmates and 1 BOP staff member have died from the coronavirus.[7]  As the Honorable Judge Anita B. Brody simply and accurately put

---

[4] *See, e.g.*, P. Leila Barghouty, *The Outline, U.S. Prisons Are Not Ready for Coronavirus* (March 6, 2020), at https://theoutline.com/post/8770/prison-coronavirus-covid-19-outbreak?zd=1&zi=oixu2i52; Martin Kaste, National Public Radio, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'* (March 13, 2020), at https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-aboutbecomingcoronavirus-incubators; Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (last updated March 2, 2020), at https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf.
[5] *See* https://federaldefendersny.org/
[6] *See id.*
[7] *See* https://www.bop.gov/coronavirus/

8

it, "[p]risons are tinderboxes for infectious disease" and "are ill-equipped to prevent the spread of COVID-19." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1, 7-8 (E.D. Pa. Apr. 1, 2020); *see also United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155 at *2 (E.D. Wash. Mar. 31, 2020) ("Because it is impossible to practice social distancing or isolation in a jail setting, the pandemic will be devastating when it reaches jail populations.").[8]

While COVID-19 poses great risk to all incarcerated people, Mr. Seresi is *uniquely* vulnerable to severe illness and death from COVID-19 due to his age and poor health. 80% of those who die from coronavirus are over 65, and as many as 15% of older adults infected will die.[9]  Additionally, "[t]he latest evidence shows that people with uncontrolled … high blood pressure may be at risk of getting severely ill with COVID-19."[10]  Mr. Seresi's age and health combined thus make his risk of succumbing to the coronavirus all the more real, and dire.

Accordingly, the inescapable conclusion that the court reached in *Rodriguez* applies equally here: "The BOP cannot adequately protect Mr. [Seresi] from infection, especially in light of his vulnerability" to the deadly virus. *Rodriguez*, 2020 WL 1627331, at *9.  This Court has the authority to prevent Mr. Seresi from becoming another statistic and should exercise that authority here.

Mr. Seresi's age and health thus weigh in favor of compassionate release.

//

---

[8] While the statistics discussed above are staggering in their own right, it is important to put them into perspective and remember the human cost of incarceration during a pandemic.  Take, for example, the tragic case of Reginald Waddell.  Mr. Waddell died from COVID-19 complications the night before his motion for compassionate release was granted.  *See United States v. Waddell,* No. 1:09-cr-00435-LO, Dkt. 122, (E.D. Va. Aug. 4, 2020).  Mr. Waddell was forced to wait 30 days to exhaust his administrative remedies and an additional 14 days in quarantine.  Due to these procedural delays, Mr. Waddell died in custody, alone, instead of with his loving family, despite all parties' agreement that release was warranted.
[9] *See* https://www.businessinsider.com/most-us-coronavirus-deaths-ages-65-older-cdc-report-2020-3.
[10] *See* https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/coronavirus-high-blood-pressure/faq-

**MOTION FOR COMPASSIONATE RELEASE**

### b.    Mr. Seresi's characteristics weigh in favor of relief.

As noted above, Mr. Seresi has been an exemplary inmate throughout his imprisonment.  He has received a single, uncontested disciplinary action during his 30 years of incarceration.[11]  This is in spite of the fact that he spent the first 20 years of his incarceration in maximum security facilities – 15 years in Lompoc and 5 years in Atwater, two of the most violent facilities in the country at the time.  He considers his stellar record attributable to his commitment to avoid confrontations, fights, inmate politics, drinking, gambling, drugs, and gangs.

Mr. Seresi has spent his years of incarceration learning and reading as much as possible, and helping others achieve their educational goals.  As discussed, he has earned three associate's degrees and a paralegal certificate while incarcerated, and has successfully completed approximately 85 educational and service-oriented courses.  *See* Cohen Decl., ¶ 4, Exhibit 3.

Mr. Seresi's family knows him to be a gentle, kind, and caring person.  He is loved by his wife, Maria, his grown children, Patricia, Cristina, and Ricardo, his ten grandchildren and step-grandchildren: Shawn (24), Valerie (23), Tristan (14), Giancarlo (10), Nicolas (7), twins Miranda and Liliana (5), Lucas (5), Guilian (3), and Giovanni (1), his sister and his nieces and nephews.  Prior to MDC's cancellation of visitation, his family visited him every Tuesday and they speak nearly daily on the phone.  *See* Cohen Decl., ¶5.  His family has stood with him throughout his incarceration and will remain devoted to him if he is released.

His daughter Patti describes him as an "exceptional" and "unique" person who always learns from his mistakes and constantly strives to become a better person.  *See* Cohen Decl., Exhibit 4.  Despite his lengthy incarceration, he has maintained a positive

---

20487663#:~:text=Health%20risks%20linked%20to%20high,severely%20ill%20with%20COVID%2D19%20.

[11] *See* Cohen Decl., ¶4, Exhibit 1 at Exhibit A, Discipline Hearing Officer Report.  Mr. Seresi's single disciplinary incident involved putting a nominal amount of money on another inmate's books.  It was wholly non-violent and Mr. Seresi readily admitted his mistake.

outlook and teaches his children to always look for the positive.  *Id.*  He has remained committed to broadening his mind and has taken advantage of every opportunity to take classes and to learn while incarcerated.  *Id.*

Mr. Seresi's characteristics, including his strong family ties, certainly weigh in favor of relief.  *See United States v. Mondaca*, 2020 WL 1029024, at *4 (S.D. Cal. Mar. 3, 2020) (noting that many courts have determined that the history and characteristics factor weighs in favor of a sentence reduction where an inmate "has numerous family ties, including family members who will provide for him.").

### 3. The balance of the § 3553(a) factors weigh in favor of relief.

#### a. Mr. Seresi's significant term of incarceration satisfies the sentencing goals of deterrence.

Mr. Seresi has served the majority of his adult life in prison.  This alone has sufficiently deterred him from engaging in future criminal conduct—which, given his lack of criminal history and non-violent nature, was unlikely to begin with—and satisfies the need for specific deterrence.  Further, his exemplary prison record and the educational and vocational training he has undertaken—knowing he had a near nonexistent chance of release—further demonstrate that Mr. Seresi has been adequately deterred from future criminal conduct.

As for general deterrence, a 30+ year sentence sends a strong message to would-be offenders that the United States will prosecute money laundering offenses to the fullest extent of the law, and that such crimes will carry harsh penalties.

Thus, the more than 31 years Mr. Seresi has served sufficiently reflects the seriousness of the offense, the need for deterrence, and promotes respect for the law. Further incarceration is unnecessary to satisfy these goals.  *See Parker*, 2020 WL 2572525 at *12 ("While Parker's underlying criminal offenses are undeniably serious, Parker has already served nearly 22 years in prison, which 'has consumed a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offenses and the need for general or specific deterrence' and 'is also a period of time that

1  promotes respect for the law and provides just punishment for his offenses.'") (quoting

2  *Redd*, 2020 WL 1248493 at *8).

3          **b.**      **Release will best provide Mr. Seresi with necessary medical care.**

4          As discussed above, further incarceration presents a grave risk to Mr. Seresi's health

5  in light of the COVID-19 pandemic.  Mr. Seresi cannot practice social distancing, the sole

6  means of protecting oneself from infection, within a custodial environment.  The risk to his

7  life, should he become infected, cannot be overstated.  Thus, release, not further

8  incarceration, is the best means to protect Mr. Seresi's health and provide him with needed

9  medical care.  Moreover, given Mr. Seresi's "extensive use of prison programming, the

10 only thing left 'to provide the defendant with needed education or vocational training' is to

11 pursue an actual vocation."  *Brown*, 2020 WL 2091802 at *10 (citing U.S.C. §

12 3553(a)(2)(D)).

13         This factor too, therefore, weighs in favor of release.

14         **c.**      **The need to avoid unwarranted sentencing disparities weighs in**

15                 **favor of Mr. Seresi's early release.**

16         If sentenced today, Mr. Seresi would likely receive a variance below the Guidelines

17 range to avoid unwarranted sentencing disparities among similarly-situated defendants, as

18 well as to avoid unwarranted similarities among dissimilarly-situated defendants.  *See* 18

19 U.S.C. § 3553(a)(6); *Gall v. United States*, 552 U.S. 38, 55 (2007).

20         As the Court is aware, the government divided the conspiracy with which Mr. Seresi

21 was charged into two parts—the Andonian case, No. 2:89-cr-190-WDK, before Judge

22 Keller, in which he was charged, and the Koyomejian case, No. 2:89-cr-189-CBM, before

23 Judge Marshall.  According to Assistant United States Attorney Richard G. Rathmann, who

24 prosecuted the Koyomejian case, "the level of sophistication in the Koyomejian case, in

25 many respects, dwarfed the Andonian case."  *See* Weinstein, Henry, "Eight Plead Guilty to

26 Money Laundering Counts." Los Angeles Times, Oct. 2, 1993.  Yet, the defendants in the

27 Koyomejian case received significantly lower sentences than Mr. Seresi did, ranging from

28 0 to 23 years with the possibility of reduction for cooperation, despite being convicted of

12

the *same conduct*.  The *lead* defendant in the Koyomejian case was released over ten years ago, in January 2007.

Mr. Seresi, of course, was not the lead defendant in the Andonian case.  He was the seventeenth charged, reflecting his low-level role.  (Sentencing Tr., Vol. 1, 27:1-7.)  Moreover, as noted, the sentencing court deemed him to be the second least culpable overall, and the least culpable of the four defendants to receive 505-year sentences.  His early release, therefore, would eliminate the unwarranted sentencing disparity that currently exists between him and the Koyomejian defendants.  *See Parker*, 2020 WL 2572525 at \*13 ("'[T]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' also cuts in favor of release.'  While Parker received a life sentence, Ruelas, Parker's co-conspirator and half-brother, ultimately received a reduced sentence of 228 months.  Similarly, after agreeing to plead guilty, Wilcox and Strickler, the other members of the [conspiracy], received sentences of 63 months and 24 months, respectively.") (quoting 18 U.S.C. § 3553(a)(6)).

### d.  Post-*Booker*, Mr. Seresi would face a significantly less severe sentence.

"Courts have specifically recognized the significance of *Booker* where, pursuant to other provisions of the FSA, inmates have sought reductions of sentences imposed prior to *Booker*.[12]  *Parker*, 2020 WL 2572525 at \*10; *see also Jones v. United States*, 431 F.Supp.3d 740, 747 (E.D. Va. 2020) ("The retroactive nature of the [FSA] provides long-awaited relief to those sentenced under the unconstitutionally imposed mandatory guideline ranges."); *accord United States v. Stanback*, 377 F. Supp. 3d 618, 625 (W.D. Va. 2019) ("The court finds that it has authority under 18 U.S.C. § 3582(c)(2) to modify Stanback's sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a).").

---

[12] *United States v. Booker*, 543 U.S. 220 (2005).

13

Post-*Booker*, there is little question that Mr. Seresi would face a much less severe sentence. From October 1, 2018 through September 30, 2019, judges have sentenced below the Guidelines range in 59.2% of all money laundering cases. *See* U.S. Sent'g Comm'n Quarterly Data Report, 4th Quarter Release, Preliminary Fiscal Year 2019 Data through September 30, 2019, at p. 17 (Table 10). The average extent of downward variance is 48.4%. *Id*. at p. 27 (Table 18). If Mr. Seresi were to receive the median percentage decrease of 50%, his life sentence – which the Sentencing Commission calculates as 470 months – would be reduced to 227 months. Mr. Seresi has already served 31 years, over 12 years longer than his likely sentence.[13]

Moreover, though the Andonian conspiracy was massive, today, it is not unprecedented. Over the last several years, many high-profile defendants whose crimes dwarf the conduct at issue were sentenced to significantly less time than Mr. Seresi. To name the most obvious example, Bernie Madoff, the architect of "the largest, longest, and most widespread Ponzi scheme in history," responsible for defrauding his investors of $65 billion, was sentenced to 150 years in prison[14] – which is less than 30% of Mr. Seresi's sentence. Likewise, Arthur Budovsky, the most culpable defendant in a case described by the government as "perhaps the biggest money laundering scheme in U.S. history"[15] - involving an underground hub used to launder $6 billion in money tied to credit card fraud, identity theft, investment fraud, computer hacking, child pornography, and drug trafficking – was sentenced to 20 years.[16] And Andrew Caspersen, the Wall Street scion who stole $40 million from his friends and family, was sentenced to 4 years.[17]

---

[13] The average sentence for money laundering is 5 years, with a median sentence of 2.75 years. *Id*. at p. 9 (Table 6).
[14] Henriques, Diana B., "Madoff is Sentenced to 150 Years for Ponzi Scheme," N.Y. Times, June 29, 2009.
[15] Hays, Tom, "7 Charged in $6B Money Laundering Case," A.P., May 28, 2013.
[16] Pagliery, Jose, "Creator of Online Money Liberty Reserve gets 20 Years in Prison," CNN Money, May 6, 2016.
[17] Goldstein, Matthew, "Wall St. Scion gets 4 Years in Prison for Fraud," N.Y. Times, November 4, 2016.

14

**MOTION FOR COMPASSIONATE RELEASE**

Thus, post-*Booker*, Mr. Seresi likely would receive a significantly less severe sentence. This factor too weighs in favor of compassionate release.

### 4. Mr. Seresi poses no danger to his community.

Prior to his incarceration, Mr. Seresi had no history of violence. His prison record belies any notion that he poses a danger to his community.

At sentencing, not only was Mr. Seresi in Criminal History Category I, he had no prior convictions whatsoever, other than minor vehicle code infractions. (PSR ¶¶ 125-129.) Indeed, his offense conduct was, by any measure, an aberration in an otherwise law-abiding life. He was then a married 44-year-old with job skills, no history of drug use, and no criminal record, placing him among the offenders least likely to recidivate in the entire criminal justice system. His advanced age now puts him squarely in that category.[18]

Mr. Seresi, moreover, has been an exemplary inmate throughout his imprisonment. As discussed above, he has taken advantage of every rehabilitative opportunity afforded to him, simply for the sake of self-improvement. He has received a single, uncontested disciplinary action during his 30 years of incarceration, in spite of the fact that he spent the first 20 years of his incarceration in notoriously-violent maximum security facilities.

Plainly, Mr. Seresi is not a danger.[19] To the extent that the Court harbors doubts in this regard, however – though, emphatically, it need not – those concerns are "significantly addressed by the fact that when the Court sentenced [Mr. Seresi], the Court ordered that '[i]f released from imprisonment, [Seresi] shall be placed on supervised release for a term of [three] years.'" *See* Exhibit A (Judgment and Commitment Order). In other words, any danger that Mr. Seresi conceivably poses to his community is adequately mitigated by the term of supervised release he will begin serving upon his release from incarceration, which will assure that, should he be stray from a law-abiding path, the Court retains the power to return him to custody. *See Parker*, 2020 WL 2572525 at *13; *see also Marks*, 2020 WL

---

[18] *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (Dec. 2017).

1908911 at *15 (finding that any risk of danger associated with a reduction in sentence "can be further mitigated by supervised release."); *United States v. Williams*, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (noting, with respect to inmate's motion for compassionate release, that while "the Court cannot conclude ... that he poses no risk at all to public safety ... the risk of him engaging in further criminal conduct is minimal and can be managed through ... the terms of his supervised release."); *see also Mondaca*, 2020 WL 1029024 at *4  (noting that inmate's compassionate release posed minimal danger because inmate "will be supervised by the Probation Department upon his release from custody through a five year term of supervised release").

For all of these reasons, Mr. Seresi poses no threat of recidivism or danger to society, and this factor too weighs in favor of compassionate release.

**C.    Mr. Seresi has a well-established release plan.**

Finally, Mr. Seresi has a well-established release plan that will provide him with care and stability following his release from incarceration.[20]

Upon release, Mr. Seresi would move in with his daughter, Patricia, and her family in Santa Clarita.  *See* Cohen Decl., ¶ 6; Exhibit 4.  Patricia is a state-certified Spanish-language interpreter and a valued member of the Los Angeles Superior Court family, having served the community in that role for 18 years.

In addition to Patricia, Mr. Seresi has significant family ties in the Los Angeles area, including his wife, his sister and her children, and his two other children, Cristina and Ricardo.  His entire family lives nearby and will be a constant source of support.  *See* Cohen Decl., Exhibit 5.  Due to the support of his adult children, all of whom have successful careers and stable families of their own, he will have fewer challenges when reentering society than he might otherwise face.  He will be able to work with his son, Ricardo, at his electronics repair store. *See* Cohen Decl., Exhibit 5.  Should this prove to be

---

[19] Should Mr. Seresi face deportation upon his release from BOP custody, plainly he will pose no danger to his community.

**MOTION FOR COMPASSIONATE RELEASE**

too much for him in light of his failing health, his children will support him financially, and in return, he will help them by providing childcare for his grandchildren. *Id.* He is very much looking forward to making up for lost time with them.

## IV. <u>CONCLUSION</u>

As the foregoing discussion reveals, Mr. Seresi is eligible for compassionate release, all discretionary factors weigh in his favor, and relief is amply justified. The Court should therefore reduce Mr. Seresi's sentence to time-served, modify the terms of supervised release to accommodate his release plan, and release him from custody forthwith.

Respectfully Submitted,
COHEN WILLIAMS LLP

Dated: September 14, 2020          By:  */s/ Reuven L. Cohen*
                                         Reuven L. Cohen
                                         Attorneys for Defendant
                                         JUAN CARLOS SERESI

---

[20] Should Mr. Seresi face deportation upon his release from BOP custody, he will be deported to Argentina where he will enjoy the support of his nephew. *See* Cohen Decl., ¶ 7.

**MOTION FOR COMPASSIONATE RELEASE**

# EXHIBIT A

# United States District Court
## Central District of California

UNITED STATES OF AMERICA vs.

Docket No. **CR – 89-190(D)-WDK**

Defendant's Name  **JUAN CARLOS SERESI**

Social Security No.  **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**

& Residence  4000 Badger Ave.
Sylmar, CA 91342

Mailing Address  **same as residence**

Address

## JUDGMENT AND PROBATION/COMMITMENT ORDER

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|---|---|---|
| August | 21, | 1991 |

FILED
OCT 18 99
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

**COUNSEL** — **WITHOUT COUNSEL**  However, the Court advised defendant of right to counsel and asked whether defendant desired to have counsel appointed by the Court and the defendant thereupon waived assistance of counsel.

[X] **WITH COUNSEL**  Edward Masry, retained
(Name of Counsel)

**PLEA** — [ ] GUILTY, and the Court being satisfied that there is a factual basis for the plea.  [ ] NOLO CONTENDERE  [X] NOT GUILTY

**FINDING** — There being a verdict of [X] GUILTY, defendant has been convicted as charged of the offense(s) of:

Conspiracy to Launder Money, in violation of 18 USC 371; 1956, as charged in Count 2 of the First Superseding Indictment; Aid and Abet Money Laundering, in violation of 18 USC 2, 1956(a)(1), as charged in Counts 3-27 of the First Superseding Indictment.

**JUDGMENT AND PROB./ COMMITMENT ORDER**  The Court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of: **505 years.** This term consists of 5 years on Count 2 and 20 years on Counts 3 through 27, all terms to be served consecutively. If the defendant is    released from imprisonment, the defendant shall be placed on supervised release for a term of three years. This term consists of 3 years on each of Counts 2 through 27, all such terms to run concurrently under the following terms and conditions: 1) defendant shall comply with the rules and regulations of the U. S. Probation Office and General Order 318. Pursuant to Section 5E1.2(f)(2) of the Guidelines, all fines are waived, including the costs of imprisonment and supervision. It is ordered that the defendant shall pay a special assessment in the amount of $1,300 to the United States.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release set out on the reverse side of this judgment be imposed. The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

[ ] This is a direct commitment to the Bureau of Prisons and the Court has NO OBJECTION should the Bureau of Prisons designate defendant to a Community Corrections Center.

Signed By: [X] U.S. District Judge _____   [ ] U.S. Magistrate
WILLIAM D. KELLER

It is ordered that the Clerk deliver a certified copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

ENTERED ON ICMS
OCT 29 1991

LEONARD A. BROSNAN, CLERK



Dated/Filed _____   By _____   Deputy Clerk

AO-245-A  (01/90)

# STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this Judgment:

1. The defendant shall not commit another Federal, state or local crime;

2. the defendant shall not leave the judicial district without the written permission of the court or probation officer;

3. the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

4. the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

5. the defendant shall support his or her dependents and meet other family responsibilities;

6. the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

7. the defendant shall notify the probation officer within 72 hours of any change in residence or employment;

8. the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

9. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;

10. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

11. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

12. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;

13. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

14. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to conform the defendant's compliance with such notification requirement;

15. the defendant shall not possess a firearm or other dangerous weapon;

16. the defendant shall, upon release from any period of custody, report to the probation officer within 72 hours

These conditions are in addition to any other conditions imposed by this Judgment.

## RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on __09-12-1991__ to __U.S. PENITENTIARY__

at __LOMPOC , CALIFORNIA__ the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

UNITED STATES MARSHAL

DATED: __Sept 12, 1991__     BY: _____

## CERTIFICATE

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

CLERK, U.S. DISTRICT COURT

DATED __8/27/91__     BY: _____

AO-245-A (01/90)          **JUDGMENT AND PROBATION/COMMITMENT ORDER**

# DECLARATION OF REUVEN L. COHEN

I, Reuven L. Cohen, declare:

1.     I am appointed counsel for Juan Carlos Seresi.  I am licensed to practice law in the State of California and I am admitted to practice in this Court.  I am submitting this declaration in support of Mr. Seresi's Motion for Compassionate Release.

2.     In May 2019, Mr. Seresi submitted a request, pursuant to 18 U.S.C. § 3582(c)(1)(A), to the Warden of Los Angeles Metropolitan Detention Center for a recommendation that the Bureau of Prisons ("BOP") file a motion for compassionate release on his behalf.  The BOP gave him an official submission date on June 24, 2019.  A true and correct copy of his request is attached hereto as Exhibit 1.  On August 5, 2020, the BOP denied Mr. Seresi's request.  Attached hereto as Exhibit 2 is a true and correct copy of the BOP's letter.

3.     Mr. Seresi suffers from the following medical conditions: high blood pressure, gout, arthritis, obesity, macular degeneration affecting his vision, cataracts, and hearing loss.

4.     Mr. Seresi is not a danger to the community.  He has no history of violence and is not a threat to recidivate.  While incarcerated, Mr. Seresi has earned three associates degrees and a Legal Assistant/Paralegal certificate, as well as completed approximately 85 educational and service-oriented courses, true and correct copies of which are attached hereto as Exhibit 3.  His prison record is exemplary, with only one disciplinary action in 31 years.  The report is attached hereto as Exhibit A to Exhibit 1.

5.     Mr. Seresi is a married man with three grown children and ten grandchildren and step-grandchildren.  Prior to MDC's lockdown, his family visited him every Tuesday and they speak nearly daily on the phone.

6.     Upon release, Mr. Seresi will reside with his daughter, Patricia Mawer, and her family in Santa Clarita.  Attached hereto as Exhibit 4 is a letter of support from Ms. Mawer.  Mr. Seresi will have significant familial support from his extended family

1

in the Los Angeles area.  His children will support him financially.  In return, he will provide child care for his grandchildren.  Attached hereto as Exhibit 5 are letters of support from his family and friends.

7.      Should Mr. Seresi be deported to Argentina, he will be supported by his nephew in Argentina.  His extended family with support him from Los Angeles.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 14, 2020, at Los Angeles, California.


                                    */s/ Reuven L. Cohen*
                                    Reuven L. Cohen

2

# EXHIBIT 1

JUAN CARLOS SERESI
Register No. 90574-012
Metropolitan Detention Center-Los Angeles
535 Alameda Street
Los Angeles, CA 90012

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN CARLOS SERESI,<br><br>Defendant. | Case No. CR-89-190-SVW<br><br>**REQUEST FOR RECOMMENDATION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)** |

I, Juan Carlos Seresi, Register Number 90574-012, hereby request that the Warden, or relevant administrator, at Los Angeles Metropolitan Detention Center, recommend that the Bureau of Prisons ("BOP") file a motion with the United States District Court that I be granted compassionate release. This request is made pursuant to 18 U.S.C. § 3582(c)(1)(A) and is based on the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

My name is Juan Carlos Seresi. I am 71 years old. I have served 30 years of a 505-year sentence for money laundering. During my incarceration, I have earned three associates degrees and, as set forth herein, have a nearly unblemished administrative record with no history of violence. Prior to my incarceration, I had no history of violence before or during my incarceration.

My half-millennium sentence is unprecedented and unwarranted. Others convicted of money laundering today face sentences of 3-5 years on average. The most culpable co-conspirators sentenced for the *same conduct* by U.S. District Judge Consuelo Marshall in the companion case to my own received drastically lower sentences, and were all released a decade ago (or earlier).

I have raised three incredible children - including a treasured member of the Los Angeles court family - and have exceptional family support. My children were still at home at the time of my sentencing. I have maintained relationships with them throughout my incarceration. They have since grown into exceptional adults with families of their own, including my ten grandchildren and step-grandchildren, with whom I have built strong relationships despite the fact that they were all born while I have been incarcerated. My family will stand by me upon release and are prepared to help reintegrate me as a contributing member of society.

I respectfully request that a motion for compassionate release be filed on my behalf.

## II. BASIS FOR RELEASE

Pursuant to BOP Program Statement 5050.50 section 4(a), inmates sentenced for an offense that occurred on or after November 1, 1987 (e.g., "new law"), who are age 70 years or older and have served 30 years or more of their term of imprisonment are eligible for the relief requested herein. I am 71 years of age and will turn 72 in less than one month's time. To date, I have served 30 years, one month, and 3 days and have earned an additional 4

**REQUEST FOR COMPASSIONATE RELEASE**

years of good conduct credit.  I, therefore, meet the necessary requirements for requesting a recommendation for compassionate release.

## A.   FACTORS SUPPORTING A RECOMMENDATION FOR COMPASSIONATE RELEASE

Pursuant to § 571.61(a)(1), I state here the extraordinary and compelling circumstances in favor of my release:

On August 21, 1991, I was sentenced to 505 years in prison by U.S. District Judge William D. Keller.  I was convicted of one count of conspiracy to launder money, in violation of 18 U.S.C. §§ 371, 1956, an offense which carried a five-year statutory maximum sentence, and twenty-five counts of aiding and abetting money laundering, in violation of 18 U.S.C. §§ 2, 1956(a)(1), an offense which carried a twenty-year statutory maximum sentence per count.  *See* Presentence Investigation Report ("PSR").  The court found that the value of the laundered funds that qualified as relevant conduct (on a conspiracy theory) under the Sentencing Guidelines was well over $100 million.  *See* Sentencing Tr., Vol. 2, 191:17-19 (Aug. 21, 1991).  The court determined a total offense level of 45 and a criminal history category of I, for which the Sentencing Guidelines then mandated a term of life.  *Id*. at Vol. 1, 75:11-13, 86:21-23, 175:4-6.

Determined to arrive at the mandatory life sentence although the statute of conviction provided for a term of years, Judge Keller consulted with the Sentencing Commission hotline.  *Id*. at Vol. 2, 192:17-193:13.  After apparently being advised that he could not legally impose a life sentence, Judge Keller nevertheless imposed a sentence that would amount to life—or, more accurately, several lifetimes.  Judge Keller ordered that the statutory maximum sentence for each count be imposed, and that each of the resulting 26 sentences run consecutively, for a total sentence of 505 years.  *Id*. at 194:8-18.

On appeal, the Ninth Circuit remanded my sentence to the district court for further findings of fact and for resentencing if necessary, holding that the district court failed to make specific findings as to my responsibility for the amount of money laundered and noting that I "was not personally involved in handling all of the funds."  *U.S. v. Andonian*,

**REQUEST FOR COMPASSIONATE RELEASE**

29 F.3d 634, *11 (9th Cir. 1994) (unpublished).  On remand, the district court summarily determined that its original, 505-year sentence was supported by its findings that $118 million laundered by co-conspirators was reasonably foreseeable to me and within the scope of my agreement, and that resentencing was therefore unnecessary.  *See U.S. v. Andonian*, No. 2:89-cr-190-WDK, Dkt. No. 1104, at 1-2 (Mar. 3, 1995).

### 1.   Post-*Booker* Sentencing Calculation

If I were sentenced today, post-*Booker* and therefore under the advisory Guidelines regime,[1] I would likely have received a sentence well under 361 months, which is the amount of actual time I have served to date.

*First*, from October 1, 2017 through June 30, 2018, judges have sentenced below Guideline range in 60.4% of all money laundering cases.  *See* U.S. Sent'g Comm'n Quarterly Data Report, 3rd Quarter Release, Preliminary Fiscal Year 2018 Data through June 30, 2018, at p. 15 (Table 10A).  The median extent of non-government sponsored downward variance is 50%.  *Id*. at p. 24 (Table 16A).  If I were to receive the median percentage decrease of 50%, my life sentence – which the Sentencing Commission calculates as 470 months – would be reduced to 235 months.  I have already served 361 months, over 10.5 years longer than my likely sentence.  The average sentence for money laundering is 5 years, with a median sentence of 3 years.  *Id*. at p. 9 (Table 6).

Though the conspiracy in my case was massive, it is not unprecedented.  Over the last several years, many high-profile defendants whose crimes dwarf mine were sentenced to significantly less time than I was.  Bernie Madoff, the architect of "the largest, longest, and most widespread Ponzi scheme in history," responsible for defrauding his investors of $65 billion, was sentenced to 150 years in prison[2] – which is less than 30% of my sentence.  Arthur Budovsky, the most culpable defendant in a case described by the government as "perhaps the biggest money laundering scheme in U.S. history"[3] - involving an

---

[1] *See United States v. Booker*, 543 U.S. 220 (2005).
[2] Henriques, Diana B., "Madoff is Sentenced to 150 Years for Ponzi Scheme," N.Y. Times, June 29, 2009.
[3] Hays, Tom, "7 Charged in $6B Money Laundering Case," A.P., May 28, 2013.

underground hub used to launder $6 billion in money tied to credit card fraud, identity theft, investment fraud, computer hacking, child pornography, and drug trafficking – was sentenced to 20 years.[4]  And Andrew Caspersen, the Wall Street scion who stole $40 million from his friends and family, was sentenced to four years.[5]

*Second*, if sentenced today, the court likely would have sentenced me to less than the 361 months I have already served in order to avoid sentencing me more harshly than a defendant who:

- commits second-degree murder (235-293 months);
- solicits murder for hire (210-262 months);
- kidnaps someone, uses a weapon, and causes the victim permanent or life-threatening bodily injury (235-293 months);
- robs a bank of $118 million, discharges a firearm, and causes bodily injury (188-235 months);
- assaults with intent to commit first-degree murder (135-168 months);
- pirates an aircraft (235-293 months); or
- recklessly kills someone (27-33 months).[6]

*Third*, I likely would have received a sentence well under 361 months because I did not receive significant financial benefit from my conduct.  In fact, I received nothing.  The money laundering Guidelines analysis, like that of most financial crimes, is driven by loss amount as a proxy for the seriousness of the offense and the culpability of the defendant. *See* U.S.S.G. §2S1.1.  That a defendant did not benefit financially from such a crime significantly undermines the rationale of the resulting Guidelines range.[7]  The trial and

---

[4] Pagliery, Jose, "Creator of Online Money Liberty Reserve gets 20 Years in Prison," CNN Money, May 6, 2016.
[5] Goldstein, Matthew, "Wall St. Scion gets 4 Years in Prison for Fraud," N.Y. Times, November 4, 2016.
[6] U.S.S.G. §§2A1.2; 2A1.5; 2A4.1; 2B3.1; 2A2.1; 2A5.1; 2A1.4.
[7] Numerous courts have criticized the high-loss financial crime Guidelines and their "fetish with abstract arithmetic" as "patently absurd on their face," *United States v. Adelson*, 441 F.Supp.2d 506, 512, 515 (S.D.N.Y. 2006) (noting the "absurd" sentencing ranges for high-loss frauds "expose[] . . . the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if

5

sentencing court recognized that I did not benefit financially from the crime of conviction. The court declined to fine or impose costs of imprisonment, noting that, "[Mr. Seresi], apparently, is a man of rather modest means, and he has two [sic] young children and again a modest residence."   Sentencing Tr., Vol. 2, 193:14-194:1.   While I was convicted of a very serious crime, the Sentencing Guidelines overstate the severity of my non-violent offense in providing for a life sentence.

*Fourth*, a variance below the Guidelines sentence would also avoid unwarranted sentencing disparities among similarly-situated defendants, as well as the need to avoid unwarranted similarities among dissimilarly-situated defendants.   *See* 18 U.S.C. § 3553(a)(6); *Gall v. United States*, 552 U.S. 38, 55 (2007).   The government divided the conspiracy with which I was charged into two parts—the Andonian case, No. 2:89-cr-190-WDK, before Judge Keller, in which I was charged, and the Koyomejian case, No. 2:89-cr-189-CBM, before Judge Marshall.   According to Assistant United States Attorney Richard G. Rathmann, who prosecuted the Koyomejian case, "the level of sophistication in the Koyomejian case, in many respects, dwarfed the Andonian case."   Weinstein, Henry, "Eight Plead Guilty to Money Laundering Counts." Los Angeles Times, Oct. 2, 1993.   Yet the defendants in the Koyomejian case received significantly lower sentences, ranging from 0 to 23 years with the possibility of reduction for cooperation, than I did.   The lead defendant in the Koyomejian case was released over ten years ago, in January 2007.   I was the fourth charged defendant in the Andonian case and, according to the trial and sentencing court, the fourth defendant in terms of culpability.   *See* Sentencing Tr., Vol. 1,

---

not cabined by common sense" and imposing a sentence of 42 months although the Guidelines provided for life imprisonment), *aff'd*, 301 F.Appx. 93 (2d Cir. 2008), "a black stain on common sense," *United States v. Parris*, 573 F.Supp.2d 744, 754 (E.D.N.Y. 2008), and, ultimately, "of no help" to the task of ascertaining a minimally-sufficient sentence, *United States v. Watt*, 707 F.Supp.2d 149, 151 (D. Mass. 2010) (imposing a two-year sentence for conspiracy to commit identity theft that resulted in losses of $20 billion). *See also, e.g.*, *United States v. Corsey*, 723 F.3d 366, 377 (2d Cir. 2013) (Underhill, J., concurring) (describing the high-loss fraud Guideline as "fundamentally flawed" and the sentences it produces as "shockingly high"); *United States v. Emmenegger*, 329 F.Supp.2d 416, 427 (S.D.N.Y. 2004) (describing the amount of loss as a "relatively weak indicator of the moral seriousness of the offense or the need for deterrence").

27:1-7.  All four defendants received 505-year sentences.  *Id.* at Vol. 2, 193:4-7 (Seresi), 197:14-20 (V. Andonian), 202:11-17 (N. Andonian), 208:11-17 (Vivias).

    *Fifth*, if sentenced today, I likely would have received a below-Guidelines sentence because, as a legal permanent resident, I could face deportation as a result of my convictions. The risk of deportation reduces the amount of imprisonment necessary to punish the offense conduct, since deportation is "a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts." *Jordan v. De George*, 341 U.S. 223, 232 (1951) (Jackson, J., dissenting).  Moreover, the possibility of my deportation, in conjunction with my extremely low risk of recidivism, renders the high cost to taxpayers of my life sentence doubly unnecessary.

    Had the sentencing court been permitted to weigh all of the 18 U.S.C. § 3553(a) sentencing factors and give a sentence in accordance with that section's parsimony principle, it likely would have sentenced me to well under the 361 months actual time I have already served.

### 2.    Gold Standard Record During Incarceration

    Furthermore, I have been an exemplary inmate throughout my imprisonment.  I have received a single, uncontested disciplinary action during my 30 years of incarceration.[8] This is in spite of the fact that I spent the first 20 years of my incarceration in maximum security facilities – 15 years in Lompoc and 5 years in Atwater, two of the most violent facilities in the country at the time.  I believe my stellar record is attributable to my commitment to avoid confrontations, fights, inmate politics, drinking, gambling, drugs, and gangs.

    I have spent my years of incarceration learning and reading as much as possible and helping others achieve their educational goals.  I earned three associates degrees – in Social & Behavioral Sciences, in Arts & Humanities, and in American Studies – as well as my

---

[8] Attached hereto as Exhibit A is a Discipline Hearing Officer Report.  I did not contest the facts underpinning the report and respectfully submit that the act described therein was borne of, and motivated by, compassion, not disrespect to the institution and/or its rules and regulations.

Legal Assistant/Paralegal Certificate while incarcerated.  I have also successfully completed approximately 85 educational and service-oriented courses.

I pose no threat of recidivism or danger to society.  I had no criminal history prior to the offense of my conviction, other than minor vehicle code violations.  *See* PSR ¶¶125-129.  At the time of sentencing, I was a married 44-year-old with job skills and no criminal history points or history of drug use, placing me among the offenders least likely to recidivate in the entire criminal justice system.  I have no history of violence, either before or during my incarceration.  No aspect of the offense of my conviction was violent.  *Id*. at ¶¶8-21.  I was, by all accounts, a low-level participant in the crime of conviction.  I was retained as a bookkeeper and was at all times an employee of my co-defendant.  *Id*. at ¶43, ¶59.  The nine months of trial transcripts in this multi-defendant case reveal that my role was minimal and low-level, and there was no evidence adduced that I managed anyone.  *See* Sentencing Tr., Vol. 1, 94:4-95:2.  I do not now have, and never did have, ties to large-scale criminal organizations, gangs, or cartels, as my BOP records will reflect.

The conduct which led to my conviction, while both significant and regrettable, was an aberrant deviation from my otherwise law-abiding life.  And in the 30 years of incarceration since that deviation, I have been a model inmate, have spent my time growing, learning, and helping others, and have maintained strong bonds with my family.  I am loved by my wife, Maria, my grown children, Patricia, Cristina, and Ricardo, and my ten grandchildren and step-grandchildren: Shawn (24),Valerie (23), Tristan (14), Giancarlo (10), Nicolas (7), twins Miranda and Liliana (5), Lucas (5), Guilian (3), and Giovanni (1).  My family visits me every Tuesday and we speak nearly daily on the phone.

### III.  RELEASE PLAN

Pursuant to § 571.61(a)(2), upon release from prison, I would move in with my daughter, Patricia, and her family in Santa Clarita.  Patricia is a state-certified Spanish-language interpreter and a valued member of the Los Angeles Superior Court family, having served the community in that role for 18 years.

**REQUEST FOR COMPASSIONATE RELEASE**

In addition to my daughter, Patricia, I have significant family support in the Los Angeles area, including my wife, my sister and her children, and my two other children, Cristina and Ricardo, all of whom will continue to provide me with support, encouragement, and financial resources.  Due to the support of my adult children, all of whom have successful careers and stable families of their own, I will have fewer challenges when reentering society than I might otherwise face.  My children will support me financially, and in return, I will help them by providing childcare for my grandchildren.  I am very much looking forward to making up for lost time with them.  I will also be able to work with my son, Ricardo, at his electronics repair store.

Should I be deported upon release, my family stands ready to support me, both emotionally and financially, in Argentina.

## IV.  CONCLUSION

For these reasons, I respectfully request the Warden recommend that the BOP file a motion for compassionate release on my behalf.

Respectfully Submitted,

Dated:  May 1, 2019                    By:  */s/ Juan Carlos Seresi*
                                               JUAN CARLOS SERESI

# EXHIBIT A

BP-A0304
JAN 17

**DISCIPLINE HEARING OFFICER REPORT**

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| Institution: | MDC Los Angeles | Incident Report Number: | | 3027800 | |
|---|---|---|---|---|---|
| NAME OF INMATE: | **SERESI, Juan** | REG. NO.: | **90574-012** | UNIT: | **7-South** |
| Date of Incident Report: | August 30, 2017 @ 8:22 p.m. | Offense Code: | 217 | | |
| Date of Incident: | August 22, 2017 @ 3:02 p.m. | | | | |
| Summary of Charges: | Giving Money to, or Receiving Money from any Person for the Purposes of Introducing Contraband | | | | |

**I. NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on:

(date)　　August 30, 2017　　at (time)　　8:31 a.m.　　(by staff member)　　R.  Velazquez, Lieutenant

B. The DHO Hearing was held on (date)　　　　September 5, 2017　　at (time)　　8:10 a.m.

C. The inmate was advised of the rights before the DHO by (staff member):

Evans　　　　　　on (date)　　September 1, 2017,　　and copy of the advisement of rights form is attached.

**II. STAFF REPRESENTATIVE**

| A. Inmate waived right to Staff Representative. | | Yes: | X | No: | |
|---|---|---|---|---|---|
| B. Inmate requested Staff Representative and | | | N/A | | appeared. |
| C. Staff Representative statement: | N/A | | | | |

D. Requested Staff Representative declined or could not appear, but inmate was advised of option to postpone hearing to obtain another Staff Representative with the result that:

| (New Staff  Representative Name) | N/A | was selected. |
|---|---|---|
| E. Staff Representative : | N/A | was appointed. |

**III. PRESENTATION OF EVIDENCE**

| A. Inmate: | Admits | X | Denies | | Neither | | the charge(s). | |
|---|---|---|---|---|---|---|---|---|

B. Summary of Inmate Statement: SERESI, Juan, Reg. No. 90574-012, appeared at this hearing and acknowledged receiving a copy of this incident report.  He stated he understood his rights before the DHO.  He raised no issues about the disciplinary process to this point.

SERESI admitted the incident report was true during his DHO Hearing.  He did not submit any written documentation or evidence on his behalf for consideration by the DHO.

| | | | | | |
|---|---|---|---|---|---|
| C. Witnesses: | | | | | |
| 1. Inmate waived right to witness(es). | | Yes: | X | No: | |

1

**BP-A0304**
**JAN 17**

**DISCIPLINE HEARING OFFICER REPORT**

**U.S. DEPARTMENT OF JUSTICE**                                     **FEDERAL BUREAU OF PRISONS**

| 2. The following persons were called as witnesses at this hearing and appeared (each witness and statement listed below): |
|---|
| N/A |

| 3. The following person requested were not called for the reason(s) given (each witness and statement listed below): |
|---|
| N/A |

| **Name of Inmate:** | SERESI, Juan | **Reg. No.:** | 90574-012 | **Hearing Date:** | September 5, 2017 |
|---|---|---|---|---|---|

| 4. Unavailable witnesses were requested to submit written statements and those statements received were considered (each witness name and statement listed below). |
|---|
| N/A |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:
Federal Bureau of Prisons TRUVIEW documentation

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because: N/A

**IV. FINDINGS OF THE DHO**

| | A. The act was committed as charged. | |
|---|---|---|
| X | B. The following act was committed: | 328 |
| | C. No prohibited act was committed:   Expunge according to Inmate Discipline PS. | |

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS**
**(Physical evidence, observations, written documents, etc.):**

BP-A0304
JAN 17

**DISCIPLINE HEARING OFFICER REPORT**

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

---

The DHO finds you committed the prohibited act of Receiving Money or Anything of Value from Another Inmate or Person without Staff Authorization, Code 328.

It should be noted your incident report was written with the prohibited act Code 217. However, the DHO determined the prohibited act Code 328 was appropriate in this particular case. The DHO determined this did not hinder your due process rights nor affected your ability to file an appeal.

You stated you were advised of your rights and you stated you understood your rights. You were again made aware of your rights before the DHO. You did not request for any witnesses nor did you request for a staff representative to assist you in preparing a defense. You have been afforded due process and have had ample time to prepare a defense prior to your Discipline Hearing.

The DHO relied on the reporting staff member's account of the incident report as written. Specifically the reporting staff member documented on August 30, 2017, at approximately 1:30 a.m., SIS staff monitored a suspicious financial transaction. The reporting staff member documented an outside person linked to CHEN, Lei, Reg. No. 55475-112, had made unauthorized deposits into several inmate accounts. The reporting staff member documented the deposits were linked by the outside person's address of 1982 Calle Bogota, Rowland Heights,CA 91748. The reporting staff member documented a SIS review of the inmate financial system revealed two suspicious money deposits were placed into your (SERESI, Juan, Reg. No. 90574-012) account on August 22, 2017, and July 24, 2017. The reporting staff member documented a total of $400 was received into your account, via Western Union. The reporting staff member documented the outside person Xiuying, Zhang appeared to be a fake contact person. The reporting staff member documented inmates use fake contact information to avoid staff monitoring abilities. The DHO relied on Federal Bureau of Prisons TRUVIEW documentation that further documented these transactions.

The DHO considered during the initial investigation when asked if the incident report was true, you had no comment. The DHO considered during your UDC review when asked if the incident report was true, you had no comment, as well. The DHO drew an adverse inference against you for remaining silent during the initial investigation and UDC review. It was not the only fact used to determine you committed the prohibitive act. However, it was noted you did not refute the charge contained in the incident report when you were given the opportunity on two occasions. The DHO relied upon his experience in a correctional environment that inmates facing a serious charge of this nature, present evidence in their defense, if they perceive the charges are false or unwarranted. The DHO considered you admitted the incident report was true during your DHO Hearing.

Therefore, based on the incident report as written, TRUVIEW documentation, as well as your own admission the incident report was true; the DHO finds you committed the prohibited act of Receiving Money or Anything of Value from Another Inmate or Person without Staff Authorization, Code 328.

---

**VI. SANCTION OR ACTION TAKEN (list each prohibited act with respective sanctions for that act):**

Monetary Fine: $50

BP-A0304
JAN 17

**DISCIPLINE HEARING OFFICER REPORT**

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| VII. REASON FOR SANCTION OR ACTION TAKEN: |
|---|
| The action/behavior on the part of an inmate to receive money from another inmate, via third party, without staff permission hampers staff's ability to control their area of responsibility. This type of behavior cannot be tolerated in a correctional setting.<br><br>A monetary fine was imposed by the DHO, to correct your misconduct and to deter you from committing future acts of misconduct of this nature.<br><br>These sanctions were imposed to correct the present inappropriate behavior and deter future behavior of this type. The DHO hopes these sanctions will motivate you towards more self-discipline in the future. |

| VIII. APPEAL RIGHTS: |
|---|
| **X** The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate. |

**IX. DISCIPLINE HEARING OFFICER**

| Printed Name | Signature | Date |
|---|---|---|
| R. Ali, Discipline Hearing Officer | | September 6, 2017 |

**DHO Report Delivered to Inmate by:**

| Printed Name (Staff) | Signature | Date and Time: |
|---|---|---|
| R. Ali, Discipline Hearing Officer | | 9/12/2017 6:00 AM |

# EXHIBIT 2



U.S. Department of Justice

Federal Bureau of Prisons

_Office of the General Counsel_                          _Washington, DC 20534_

August 5, 2020

MEMORANDUM FOR M. LEJEUNE, ACTING WARDEN
                FEDERAL CORRECTIONAL INSTITUTION
                MENDOTA, CALIFORNIA

                    _James C Wills for_
FROM:           Ken Hyle
                Assistant Director/General Counsel

SUBJECT:        SERESI, Juan Carlos
                Federal Register No. 90574-012
                Request for Reduction in Sentence

Please be advised that Mr. Seresi's request for a reduction in
sentence (RIS) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and
PS 5050.50, Compassionate Release/Reduction in Sentence:
Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and
4205(g), section 4(a) ("'New Law' Elderly Inmates"), is denied.
We have carefully reviewed the documentation submitted with this
request and have consulted with the Assistant Director of the
Correctional Programs Division.

Section 4(a) provides that an inmate sentenced for an offense
that occurred on or after November 1, 1987, may be considered
for a RIS once he is 70 years old or older and has served at
least 30 years of his term of imprisonment.  In addition,
section 7 requires consideration of factors such as the nature
and circumstances of the inmate's offense; his criminal history,
including any supervised release violations; unresolved
detainers; and whether release would minimize the severity of
the offense or pose a danger to the safety of any other person
or to the community.
Mr. Seresi, age 73, has served over 31 years of his 505-year
sentence.  BOP records reflect an offense date of June 3, 1988.

Mr. Seresi therefore meets the criteria for a RIS under section 4(a).  However, due to the nature and circumstances of his offense, his release would minimize the severity of his criminal conduct.  Additionally, Mr. Seresi is subject to an Immigration and Customs Enforcement (ICE) detainer, and ICE would initiate removal proceedings were Mr. Seresi granted a RIS.  Accordingly, his RIS request is denied.

Please provide Mr. Seresi with a copy of this decision.


cc:  T. Ray Hinkle, Acting Regional Director, Western Region

# EXHIBIT 3

# Coastline Community College

*Upon recommendation of the Faculty and*
*under authorization granted by the Board of Trustees*

*the Associate in Arts in*

## Social & Behavioral Science

*is hereby conferred upon*

## Juan Carlos Seresi

*with all Rights, Benefits and Privileges appertaining thereto*
*in evidence of the satisfactory completion of the program.*
*Given in the month of December, 2013*

_____
President, District Board of Trustees

_____
Lolita P. Adrian
President



# Coastline Community College

*Upon recommendation of the Faculty and
under authorization granted by the Board of Trustees*

*the Associate in Arts in*

## Arts & Humanities

*is hereby conferred upon*

### Juan Carlos Seresi

*with all Rights, Benefits and Privileges appertaining thereto
in evidence of the satisfactory completion of the program.
Given in the month of May, 2015.*

_____
*President, District Board of Trustees*

_____
*President*

# Coastline Community College

*Upon recommendation of the Faculty and
under authorization granted by the Board of Trustees*

the Associate in Arts in

## American Studies

*is hereby conferred upon*

### Juan Carlos Seresi

*with all Rights, Benefits and Privileges appertaining thereto
in evidence of the satisfactory completion of the program.
Given in the month of May, 2015.*

_____
President, District Board of Trustees



_____
Loretta P. Adrian
President

# BLACKSTONE PARALEGAL STUDIES, INC



July 20, 2001

Juan Carlos Seresi
3901 Klein Blvd.
Lompoc, CA 93436

Dear Juan:

We wish to congratulate you upon satisfactory completion of your Legal Assistant/Paralegal curriculum. We have enclosed your graded transcript and your Certificate of Completion. We hope that you will be pleased with the Certificate of Completion and that you will prize it highly. It should always remind you of a period of very earnest, conscientious effort and achievement on your part.

Your relationship with us need not end at this point. At least write us occasionally of your progress and experiences.

We consider it a privilege and honor to award you our Certificate of Completion and trust that the knowledge gained will enrich your entire life.

Sincerely,

James W. Fry, Jr.

James W. Fry, Jr.
President

JWF/drm

# BLACKSTONE PARALEGAL STUDIES, INC

**Legal Training Since 1890**

### 915 Clock Hours

Student ___JUAN CARLOS SERESI___ Matriculation Number ___84966___

Address ___3901 KLEIN BLVD.   LOMPOC, CA  93436___

Matriculation Date ___07/01/1999___ Completion Date ___07/20/2001___

| TEXT and SUBJECT | | GRADE | TEXT and SUBJECT | | GRADE |
|---|---|---|---|---|---|
| Volume 1 | | | Volume 6 (continued) | | |
| Introduction to Law | Test 1 | 96 | Practice in Civil Actions | Test 17 | 91 |
| Contracts | Test 2 | 100 | Criminal Procedure | Test 18 | 92 |
| Contracts | Test 3 | 96 | | | |
| Contracts | Test 4 | 98 | Volume 7 | | |
| | | | Wills | Test 19 | 97 |
| Volume 2 | | | Wills | Test 20 | 94 |
| Law of Torts | Test 5 | 100 | Trusts | Test 21 | 100 |
| Law of Torts | Test 6 | 98 | | | |
| Law of Torts | Test 7 | 100 | Volume 8 | | |
| Law of Torts | Test 8 | 100 | Law of Private Corporations | Test 22 | 96 |
| | | | Law of Partnerships | Test 23 | 100 |
| Volume 3 | | | Law of Partnerships | Test 24 | 96 |
| Criminal Law | Test 9 | 97 | | | |
| Criminal Law | Test 10 | 95 | Volume 9 | | |
| | | | Constitutional Law | Test 25 | 100 |
| Volume 4 | | | Constitutional Law | Test 26 | 95 |
| Real Property (Part I) | Test 11 | 100 | | | |
| Real Property (Part I) | Test 12 | 97 | Volume 10 | | |
| | | | Constitutional Law | Test 27 | 88 |
| Volume 5 | | | | | |
| Real Property (Part II) | Test 13 | 100 | Legal Research I | Composite Score | 83 |
| Real Property (Part II) | Test 14 | 97 | Legal Research II | Composite Score | 91 |
| | | | | | |
| Volume 6 | | | Employability Skills | Composite Score | 96 |
| Pleadings in Civil Actions | Test 15 | 91 | | | |
| Pleadings in Civil Actions | Test 16 | 100 | Ethics for Paralegals | | 95 |

95 - 100 Excellent;   90 - 94 Very Good;   85 - 89 Good;   80 - 84 Fair;   75 - 79 Satisfactory
Below 75 Unsatisfactory

This document issued ___July 20, 2001___

BLACKSTONE PARALEGAL STUDIES, INC

By ___P. Legreid___
Registrar



# Blackstone Paralegal Studies, Inc.

ESTABLISHED · A.D. 1890

**DALLAS,   U.S.A.**

**915 CLOCK HOURS**

**confers this certificate of**

## Legal Assistant/Paralegal

*upon*

## JUAN CARLOS SERESI

*who has fulfilled all the requirements prescribed by the School and is entitled to all of the honors, rights and privileges thereunto appertaining.*

**In Testimony Whereof** *this recognition of achievement is Given this* 20th *day* of July *A.D. 20* 01 *at Dallas in the State of Texas.*

President

Director of Instruction

```
MENCG              *      INMATE EDUCATION DATA        *      08-06-2015
PAGE 001           *            TRANSCRIPT             *      09:14:04

REGISTER NO: 90574-012      NAME..: SERESI              FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: MEN-MENDOTA FCI

------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION                    START DATE/TIME STOP DATE/TIME
MEN  ESL HAS    ENGLISH PROFICIENT             09-24-1991 1439 CURRENT
MEN  GED HAS    COMPLETED GED OR HS DIPLOMA    09-30-1992 1256 CURRENT

-------------------------- EDUCATION COURSES --------------------------
SUB-FACL    DESCRIPTION                   START DATE  STOP DATE EVNT AC LV  HRS
MEN         REC ASSIST(AIDE)CL/TH/2-3PM   07-07-2015 CURRENT
MEN         ATTITUDE ADJUSTMENT           06-24-2015 07-15-2015  P  C  P      4
MEN         BEG CARD MAKING/FRI 530-630   05-04-2015 06-25-2015  P  C  P      8
MEN         THINKING ON YOUR FEET         05-28-2015 06-23-2015  P  C  P      2
MEN         HEALTH & NUTRIT CL/T&TH/6-7PM 05-13-2015 06-03-2015  P  C  P      8
MEN         INMATE HEALTH FAIR-DATES VARY 03-23-2015 03-23-2015  P  C  P      2
MEN         HLTH CONSCIOUS/M&F/5:20-6:20P 01-05-2015 03-10-2015  P  C  P     11
MEN         ADVANCED CHESS/630-730P/TH-F  09-22-2014 01-05-2015  P  C  P      1
MEN         EDU/POSTSECONDARY/IND.STUDY   06-24-2014 10-14-2014  P  W  I      0
MEN         BEGINNING CHESS/630-730P/M-TU 05-09-2014 09-08-2014  P  C  P     12
VIM         COASTLNE COM COL AA DEGREE    10-01-2013 04-01-2014  P  C  P    360
VIM         ACE TYPING - TUESDAY EVENING  12-04-2013 01-21-2014  P  C  P     10
VIM         COASTLNE COM COL BUSINESS WRI 08-27-2012 05-27-2013  C  C  P      0
VIM         COASTLNE COM COL BUSINESS ENG 01-28-2013 05-27-2013  C  C  P      0
VIM         IVANHOE SELF-STUDY            07-11-2013 09-10-2013  P  C  P     10
VIM         ACE - LITERATURE - METROPOLIS 04-17-2013 06-28-2013  P  C  P      3
VIM         ACE RED BADGE OF COURAGE      01-07-2013 02-28-2013  P  C  P     10
VIM         ACE - LITERATURE - MOBY DICK  12-03-2012 01-03-2013  P  C  P     10
VIM         BEGINNERS BEADING CLASS       05-18-2012 06-22-2012  P  C  P      6
VIM         WEIGHT MANAGEMENT CLASS       08-18-2012 09-22-2012  P  C  P      6
VIM         CORE STABILITY INSTRUCT TRAIN 08-20-2012 09-24-2012  P  C  P      6
VIM         GULLIVER'S TRAVELS            05-01-2012 05-31-2012  P  C  P     10
VIM         ACE ROBINSON CRUSOE SELF STUDY 04-02-2012 04-30-2012  P  C  P    10
VIM         ACE TIME MACHINE SELF STUDY   03-01-2012 03-31-2012  P  C  P     10
VIM         ACE 20000 LEAGUES UNDER THE SE 02-01-2012 02-29-2012  P  C  P    10
VIM         ACE THE MAN IN THE IRON MASK  01-03-2012 01-03-2012  P  C  P     10
VIM         IVANHOE SELF-STUDY            12-01-2011 12-30-2011  P  C  P     10
ATW         APPRENTICESHIP - TEACHER AIDE 06-28-2007 06-22-2008  P  W  I   1040
VIM         ACE VET ASSISTANT 1 & 2       01-09-2010 05-20-2010  P  C  P    100
VIM         ACE PALS TRAIN/TRAINER PROGRAM 01-09-2010 05-20-2010  P  C  P    100
VIM         ACE INTERMEDIATE STOCK INVEST 01-08-2010 03-26-2010  P  C  P     10
VIM         ACE SHELTER ASSISTANT         09-10-2009 12-18-2009  P  C  P    100
VIM         ACE BASIC STOCK INVESTING     09-29-2009 12-18-2009  P  C  P     10
VIM         ACE KENNEL ASSISTANT          09-10-2009 12-03-2009  P  C  P    100
VIM         RPP FCI 1 PUBLIC SPEAKING (C6) 09-15-2009 10-05-2009  P  C  P     7
VIM         ACE AUTOMOTIVE ELECTRONICS    07-05-2009 09-29-2009  P  C  P     10
VIM         PARENTING FROM A DISTANCE     07-12-2009 09-27-2009  P  C  P     10
VIM         ACE AUTOMOTIVE BRAKES & TRANS 05-13-2009 06-23-2009  P  C  P     10
ATW         BEGINNING RUSSIAN             12-18-2008 03-14-2009  P  C  P     20
ATW         ACE BASIC ARITHMETIC          12-15-2008 03-14-2009  P  C  P     20

G0002       MORE PAGES TO FOLLOW . . .
```

```
 MENCG          *        INMATE EDUCATION DATA      *      08-06-2015
 PAGE 002        *             TRANSCRIPT            *      09:14:04

 REGISTER NO: 90574-012    NAME..: SERESI                FUNC: PRT
 FORMAT.....: TRANSCRIPT   RSP OF: MEN-MENDOTA FCI
```

```
------------------------------ EDUCATION COURSES ------------------------------
```

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| ATW | INTRODUCTION TO WORLD HISTORY | 12-17-2008 | 03-14-2009 | P | C | P | 20 |
| ATW | BEG NUTRITION & RPP CLASS USP | 12-13-2008 | 01-31-2009 | P | C | P | 8 |
| ATW | INTRODUCTION TO WORLD HISTORY | 04-13-2008 | 06-16-2008 | P | C | P | 20 |
| ATW | INTRO TO LATIN CULTURE | 10-14-2007 | 12-16-2007 | P | C | P | 20 |
| ATW | OFFICE AUTOMATION-COLLEGE | 07-02-2007 | 08-30-2007 | P | C | C | 102 |
| ATW | INTERMEDIATE INVESTING | 04-15-2007 | 06-23-2007 | P | C | P | 20 |
| ATW | INTERMEDIATE INVESTING | 04-13-2007 | 06-23-2007 | P | C | P | 20 |
| ATW | INTERMEDIATE INVESTING | 04-15-2007 | 06-23-2007 | P | C | P | 20 |
| ATW | ACE SMALL BUSINESS DEV | 01-14-2007 | 03-24-2007 | P | C | P | 40 |
| ATW | INTRO TO HEAT, VENT. & A/C | 01-14-2007 | 03-24-2007 | P | C | P | 40 |
| ATW | VT OFFICE AUTOMATION | 09-15-2006 | 12-22-2006 | P | C | M | 108 |
| ATW | OFFICE AUTOMATION-COLLEGE | 08-16-2005 | 09-15-2005 | P | C | C | 108 |
| LOM | CODE ORIENTATION | 12-15-2002 | 07-20-2005 | P | C | P | 20 |
| LOM | ANGER MANAGEMENT | 07-09-2003 | 02-20-2004 | P | C | P | 20 |
| LOM | BASIC CONVERSATIONAL RUSSIAN | 03-19-2005 | 07-27-2005 | P | W | I | 30 |
| ATW | CHARACTER/PORTRAIT ANIMATION E | 05-27-2005 | 07-15-2005 | P | C | P | 8 |
| LOM | RELAPSE PREVENTION | 08-02-2004 | 11-02-2004 | P | C | P | 40 |
| LOM | RELAPSE PREVENTION | 08-29-2003 | 11-02-2004 | P | C | P | 40 |
| LOM | ACE EVENING EDUCATION | 06-23-2004 | 09-22-2004 | P | C | P | 28 |
| LOM | VT BUSINESS COMPUTER AM | 01-27-2003 | 03-18-2004 | P | C | M | 250 |
| LOM | CRIMINAL LIFESYLES 1 | 03-31-2003 | 08-20-2003 | P | C | P | 40 |
| LOM | CRIMINAL LIFESYLES 2 | 05-30-2003 | 08-07-2003 | P | C | P | 20 |
| LOM | CRIMINAL LIFESYLES 1 | 03-31-2003 | 05-30-2003 | P | C | P | 20 |
| LOM | LEGAL RESEARCH MON  7-8:30 PM | 02-11-2002 | 04-22-2002 | P | C | P | 20 |
| LOM | SMALL BUSINESS M-W 7-9:00PM | 07-05-2001 | 09-28-2001 | P | C | P | 52 |
| LOM | BUSINESS 359 | 09-28-2001 | 09-28-2001 | P | C | P | 1 |
| LOM | ADVANCED BUSINESS COMPUTERS | 05-05-2000 | 01-16-2001 | P | C | M | 250 |
| LOM | CHESS T 700-800PM SAT 100-300P | 07-01-2000 | 11-04-2000 | P | C | P | 16 |
| LOM | RPP HOBBYSHOP | 05-21-2000 | 05-21-2000 | P | C | P | 1 |
| LOM | CREATIVE WRITING | 10-28-1999 | 02-03-2000 | P | C | P | 20 |
| LOM | HOBBYSHOP INSTRUCTIONS | 10-22-1999 | 05-21-2000 | P | C | P | 60 |
| LOM | CREATIVE WRITING FPC | 10-28-1999 | 02-03-2000 | P | C | P | 22 |
| LOM | INTRODUCTION TO WELLNESS | 10-25-1996 | 09-15-1999 | P | C | P | 40 |
| LOM | RPP WRITING | 02-03-1999 | 02-03-1999 | P | C | P | 1 |
| LOM | INDOOR SOCCER LEAGUE PLAY | 11-03-1998 | 01-12-1999 | P | C | P | 12 |
| LOM | UNDERSTANDING BASIC NUTRITION | 09-17-1996 | 01-21-1997 | P | C | P | 140 |
| LOM | SMALL BUSINESS DEVELOPMENT | 10-02-1996 | 12-11-1996 | P | C | P | 40 |
| LOM | MATH CLASS WED/THURS 7-9:00PM | 06-28-1996 | 09-19-1996 | P | C | P | 30 |
| LOM | VT BUSINESS COMPUTER PM | 02-28-1996 | 09-05-1996 | P | C | M | 180 |
| LOM | PARENTING USP II | 06-27-1996 | 09-03-1996 | P | C | P | 80 |
| LOM | RPP PARENTING | 09-03-1996 | 09-03-1996 | P | C | P | 1 |
| LOM | PARENTING PROGRAM USP | 04-07-1996 | 06-11-1996 | P | C | P | 25 |
| LOM | SMALL BUSINESS DEVELOPMENT | 11-13-1994 | 07-03-1995 | P | C | P | 73 |
| LOM | VT BUSINESS COMPUTER PM | 03-05-1993 | 02-08-1995 | P | C | M | 1200 |
| LOM | DEVELOPING YOUR POTENTIAL | 04-23-1994 | 06-14-1994 | P | C | P | 50 |

```
 G0002      MORE PAGES TO FOLLOW . . .
```

```
 'MENCG              *        INMATE EDUCATION DATA       *      08-06-2015
 PAGE 003 OF 003 *                TRANSCRIPT             *      09:14:04

 REGISTER NO: 90574-012     NAME..: SERESI                    FUNC: PRT
 FORMAT.....: TRANSCRIPT    RSP OF: MEN-MENDOTA FCI

 ----------------------------  EDUCATION COURSES  ----------------------------
 SUB-FACL   DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
 LOM        LANGUAGE ARTS AM             10-04-1991 10-23-1991  P  C  P    20
```

```
 G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# Certificate of Appreciation

## FOR YOUR HELP & ASSISTANCE

• Juan Carlos Seresi •

This certificate acknowledges that the above-named person gave of himself and his time for the "Kairos Number Twenty" gathering held October 11th throughout October 13, 2003, at the United States Penitentiary in Lompoc, California. You are appreciated & will be remembered by us all.

_Reynold Fujikawa_
Reynold Fujikawa, Chaplain

_Dr. John F. Burke_
John F. Burke, Chaplain

_Greg Nelson_
Greg Nelson, Chaplain

# Certificate of Appreciation

## FOR YOUR HELP & ASSISTANCE

### • *Juan Carlos Seresi* •

This certificate acknowledges that the above-named person gave of himself and his time for the "Kairos Number Nineteen" gathering held February 19 throughout February 21, 2005, at the United States Penitentiary in Lompoc, California. You are appreciated & will be remembered by us all.

_____
Chaplain Reynold Fujikawa

_____
Deacon John F. Burke

_____
Chaplain Greg Nelson

# Certificate of Achievement

### This certifies that:

## Juan Carlos Seresi

*has successfully completed the specialized course in:*

# ·Microsoft Excel 2000·
# 85-Hour Course

*and is therefore honored this 8th day of January 2001*

K. Towner, Instructor

**VTC 709**

R. Pacheco, EPA



# Certificate of Completion

## This certifies that:

# Juan Carlos Seresi

### has successfully completed the course:

## • Cage Your Rage •

### and is therefore honored this 12th day of December 2003.

A. Cooks
Psychologist Treatment Specialist

For

Dr. J. Kerr,
Chief Clinical Psychologist

# Certificate of Achievement

### This certifies that:

## Juan Carlos Seresi

*has successfully completed the specialized course in:*

# · Microsoft Word 2000 ·
# 85-Hour Course

*and is therefore honored this 8th day of January 2001*

K. Towner, Instructor

**VTC 708**

R. Pacheco, EPA



# CERTIFICATE OF COMPLETION

**FCI-1 VICTORVILLE EDUCATION DEPARTMENT**

**Certifies that**

## JUAN SERESI

**Has satisfactorily completed 10 participation hours**

**On this 28 day of December 2012 in**

## CLASSIC LITERATURE: MOBY DICK

J.Vandiver, A.C.E. Coordinator

# CERTIFICATE OF COMPLETION

**Federal Correctional Complex**

**VICTORVILLE EDUCATION DEPARTMENT**

**Certifies that**

# Juan Carlos Seresi

has satisfactorily completed **10** hours of coursework in

*Literature – The Red Badge of Courage*

**February 28, 2013**

W. Young, A.C.E. Coordinator

# CERTIFICATE OF COMPLETION

**Federal Correctional Complex**

**VICTORVILLE EDUCATION DEPARTMENT**

certifies that

# Juan Carlos Seresi

has satisfactorily completed **3** hours of coursework in

*ACE Literature – "Metropolis"*

June 28, 2013

_____
W. Young, A.C.E. Coordinator

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

has completed and passed the certification exams
for the courses of

**Transportation Security**
**Extreme Weather Driving: For all Drivers**
**Commercial Motor Vehicle Inspections**
**Hours-Of-Service Rules: What You Need To Know**
**Commercial Motor Vehicle Driving Logs**

Training Coordinator

Lemon Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

## has completed and passed the certification exams for the courses of

**Workers Compensation - Supervisors**
**Flaggers' Safety in Highway Work Zones**
**Arc Flash Safety**
**Material Handling Aids**
**Abrasive Grinding Wheels**

Training Coordinator

Coral Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

has completed and passed the certification exams
for the courses of

**Portable Power Tool Safety**
**Hand Tool Safety**
**Eye Protection**
**Spill Prevention and Control**
**MSDS-Material Safety Data Sheets**

_____
Training Coordinator

Yellow Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

has completed and passed the certification exams
for the courses of

**Working in Cold Conditions**
**Working in Hot Conditions**
**Trenching-Competent Person**
**Lead Safety in Construction**
**Introduction to Rough Terrain-Forklift Safety**

_____
Training Coordinator

Cream Book

# **Certificate of Completion**

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

## has completed and passed the certification exams
## for the courses of

**Behavior-Based Safety For Supervisors**
**Disaster Planning-Employees**
**Safety Attitude**
**Welding, Cutting and Brazing**
**Introduction to OSHA and the General Duty Clause**

Training Coordinator

Gray Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

has completed and passed the certification exams
for the courses of

**Accident Investigation**
**ADA-Americans with Disabilities Act**
**Bloodborne Pathogens - General**
**Compressed Gases**
**Working Safely with Corrosives**
**Permit Required - Confined Spaces - Entrant**
**Permit Required - Confined Spaces - Attendant**

Training Coordinator

# *Certificate of Completion*

**FCI Mendota Education Department**

**Certifies that**

## *SERESI, JUAN*

*Has successfully completed the following program*

## *ACE Attitude*

*This certificate is hereby issued on the 17th day of July, 2015*

**Training Instructor**

# FCI MENDOTA

## Spinning Class

### THIS CERTIFIES THAT

# Seresi, J.

Has successfully completed all requirements
pertaining to the course of instruction in
Spinning Class for the Recreation Department.
Given this 8th day of July, 2015

_____

E. Davila, Recreation Specialist

*Certificate of Achievement*

Awarded to:   SERSI, J.



For the successful completion of the
### BEGINNER CARD MAKING CLASS
Through the Leisure Program at FCI Mendota Recreation Department
Given this 3RD day of JULY 2015

E. BECERRA RECREATION SPECIALIST

# Certificate of Completion

## J. Seresi

### The above named participant has successfully completed the

### USP Atwater Nutrition Class.



S. Caes, Supervisor of Recreation

2-1-09

F. Aguilar, Recreation Specialist

# Certificate of Appreciation

## FOR YOUR HELP & ASSISTANCE

### • *Juan Carlos Seresi* •

This certificate acknowledges that the above-named person gave of himself and his time for the "*Kairos Number Twenty-Two*" gathering held February 19 throughout February 21, 2005, at the United States Penitentiary in Lompoc, California. You are appreciated & will be remembered by us all.

**Chaplain Reynold Fujikawa**

**Deacon John F. Burke**

**Chaplain Greg Nelson**

# Certificate of Appreciation

## FOR YOUR HELP & ASSISTANCE

## • • Juan Carlos Seresi • •

This certificate acknowledges that the above-named person gave of himself and his time for the "Kairos Number Eighteen" gathering held October 11 to October 14, 2002, at the United States Penitentiary in Lompoc, California. You are appreciated & will be remembered by us all.

Deacon John F. Burke,

Kairos # 18

Fr. Michael Kirkness, Chaplain

# Certificate of Appreciation

## FOR YOUR HELP & ASSISTANCE

## • • Juan Carlos Seresi • •

This certificate acknowledges that the above-named person gave of himself and his time for the "Kairos Number Seventeen" gathering held the weekend of May 24 to May 27, 2002, at the United States Penitentiary in Lompoc, California. You are appreciated & will be remembered by us all.

Deacon John F. Burke,

Fr. Michael Kirkness, Chaplain

Chaplain D. Greg Nelson

# Certificate of Appreciation

## FOR YOUR HELP & ASSISTANCE

### • Juan Carlos Seresi •

This certificate acknowledges that the above-named person gave of himself and his time for the "Kairos Number Nineteen" gathering held May 23 throughout May 26, 2003, at the United States Penitentiary in Lompoc, California. You are appreciated & will be remembered by us all.

_____
**Reynold Fujikawa, Chaplain**

_____
**Deacon John F. Burke,**

_____
**Greg Nelson, Chaplain**

# Certificate of Appreciation

## FOR YOUR HELP & ASSISTANCE

• • *Juan Carlos Peresi* • •

This certificate acknowledges that the above-named person gave of himself and his time for the "Kairos Number Sixteen" gathering held the weekend of October 6-8, 2001, at the United States Penitentiary in Lompoc, California. You are appreciated & will be remembered by us all.

*Deacon John F. Burke,*          Fr. Michael Kirkness, Chaplain          Chaplain D. Greg Nelson



*Certificate of Appreciation*

## For your Help & Assistance

## ⬤⬤ Juan Carlos Seresi ⬤⬤

This Certificate Acknowledges That the Above-named Person
Gave Himself and His Time for the "Kairos Number
Twenty-one" Gathering Held May 28 to May 31, 2004, at the
United States Penitentiary in Lompoc, California.  You Are
Appreciated & Will Be Remembered by Us All.

_____          _____          _____
*Rev. G. Nelson, Chaplain*     *Deacon John F. Burke, Chaplain*     *Rev. R. Fujikawa, Chaplain*

# CERTIFICATE OF COMPLETION

**FCI-1 VICTORVILLE EDUCATION DEPARTMENT**

**Certifies that**

## JUAN CARLOS SERESI

**Has satisfactorily completed 10 participation hours**

**On this 27th day of January 2012 in**

# THE MAN IN THE IRON MASK

**J. Vandiver, Adult Continuing Education
Coordinator**

**M. Placker, Assistant Supervisor of Education**

# Certificate of Completion

## FCC Victorville Safety Department

### Certifies that

## J. C. Seresi

has completed and passed the certification exams
for the courses of

**Respiratory Protection-Healthcare Workers**
**Respiratory Fit Testing**
**Noise & Hearing Conservation**
**Machine Guarding**
**Lockout/Tagout Authorized Employee**



Training Coordiantor

10/30/12



# Certificate of Completion

FCC Victorville Safety Department
Certifies that

## J. C. Seresi

has completed and passed the certification exams

for the courses of

**Back Safety**
**Forklift Safety**
**Personal Protective Equipment**
**Hazard Communication**

Training Coordinator

# Certificate of Completion

## FCC Victorville Safety Department

Certifies that

## Juan Carlos Seresi

has completed and passed the certification exams
for the courses of

**Bloodborne Pathogens For Corrections**
**Respiratory Protection**
**Disposable Respirators**
**Confined Spaces - General**
**Slips, Trips, & Falls**
**Fire Safety**
**Electrical Safety**



Training Coordinator
11/06/12

# Certificate of Completion

FCC Victorville Safety Department

Certifies that

## J. C. Seresi

has completed and passed the certification exams for the courses of

**Defensive Driving**
**Saving Energy at Work & Beyond**
**Workplace Safety for Employees**
**Stress Management**
**Good Housekeeping**

Training Coordinator
11/27/17

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

## has completed and passed the certification exams
## for the courses of

**Crane Rigging**
**Crane Rigging In Construction**
**Permit-Required Confined Space Rescue**
**Preventing Slips, Trips & Falls - Employees**
**Slips, Trips & Falls - Supervisors**

_____
Training Coordinator

Grape Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

## has completed and passed the certification exams
## for the courses of

**Exit Routes-Supervisors**
**Job Hazard Analysis**
**HAZWOPER-First Responder**
**Emergency Action and Fire Prevention**
**Office Hazards**

Training Coordinator

Fuchsia Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN  CARLOS  SERESI

has completed and passed the certification exams
for the courses of

**Flammable & Combustable Liquids**
**Battery Safety**
**Forklift & Pedestrian Safety**
**Reactive Chemicals**
**Forklift Operator Safety**

Training Coordinator

Orange Book

# Certificate of Completion

## FCC Victorville Safety Department
Certifies that

JUAN CARLOS SERESI

has completed and passed the certification exams
for the courses of

**Dipping, Coating & Cleaning Operations**
**Preventing Amputations**
**Introduction To Industrial Hygiene**
**Housekeeper Safety**
**Silicosis Prevention**

_____
Training Coordinator

Teal Book

# Certificate of Completion

FCC Victorville Safety Department

Certifies that

## J.C. Seresi

has completed and passed the certification exams
for the courses of

**Flammable & Combustable Liquids**
**Battery Safety**
**Forklift & Pedestrian Safety**
**Reactive Chemicals**
**Forklift Operator Safety**

Training Coordinator

10/12/12

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

## has completed and passed the certification exams
## for the courses of

**Lead Safety-General Industry**
**Wellness and You**
**Hazard Communication Refresher**
**Asbestos Awareness**
**Laundry Safety**

_____
Training Coordinator

Forest Green Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

## has completed and passed the certification exams
## for the courses of

**Kitchen Safety**
**Shiftwork Safety**
**PPE for Emergency Response**
**Working Safely Outdoors**
**Reactive Chemicals**

_____
Training Coordinator

Salmon Book

# Certificate of Completion

## FCC Victorville Safety Department
## Certifies that

JUAN CARLOS SERESI

## has completed and passed the certification exams
## for the courses of

**Hazardous Material Transportation**
**Office Ergonomics**
**Ergonomics - Industrial**
**Fall Protection in Construction**
**Aerial Lift Safety**
**Scaffolds in Construction**
**Fire Extinguishers**

Training Coordinator

Gold Book

# Certificate of Completion

FCC Victorville Safety Department

Certifies that

## J.C. Seresi

has completed and passed the certification exams
for the courses of

**Hand Protection**
**Safety and Health Program**
**Foot Protection**
**Eye and Face Protection**
**Head Protection**

Training Coordinator

1/2/2013

Red Book

# **Certificate of Completion**

## FCC Victorville Safety Department
## Certifies that

JUAN  CARLOS  SERESI

has completed and passed the certification exams
for the courses of

**Food Service Safety**
**Warehouse Safety**
**Electical Safety - Unqualified Worker**
**Mold Hazards and Prevention**
**Preparing for Weather Emergencies**

_____
Training Coordinator

White Book

# Certificate of Completion

FCC Victorville Safety Department

Certifies that

## J.C. Seresi

has completed and passed the certification exams
for the courses of

**Working Safely with Pesticides**
**Safe Chemical Handling**
**Ladder Safety**
**Chemical Labeling**
**Working Safely with Solvents**

Training Coordinator

Aqua Book

1/2/2013

# CERTIFICATE OF COMPLETION

## FCI-1 VICTORVILLE EDUCATION DEPARTMENT

**Certifies that**

# JUAN SERESI

**Has satisfactorily completed 10 participation hours**

**On this 31 day of May 2012 in**

# GULLIVER'S TRAVELS

**J. Vandiver, Adult Continuing Education Coordinator**

**M. Placker, Assistant Supervisor of Education**

# Certificate Of Completion

*Juan Seresi*

*90574-012*

*Successfully completed the CODE*
*"Living With Others"*

December 30, 2004



_____
M. Callis, Ph.D.,CODE/DAP Coordinator

_____
A. R. Cooks,, Psychology Treatment Specialist

# Certificate of Achievement

This certifies that

*Juan Carlos Seresi*

has satisfactorily completed

# HVAC

Consisting of 40 hours of Adult Education From January 18th through March 22nd, 2007.
This certificate is hereby issued this 3rd day of April, 2007

_____
M. Chavez, Supervisor of Education

_____
M. Inderbitzen, A.C.E. Coordinator



# Certificate of Achievement

This certifies that

*Juan Carlos Seresi*

has satisfactorily completed

# Small Business

Consisting of 40 hours of Adult Education From January 17th through March 21st, 2007.
This certificate is hereby issued this 3rd day of April, 2007

M. Chavez, Supervisor of Education

M. Inderbitzen, A.C.E. Coordinator

# Certificate of Completion

**This certifies that:**

*Juan Carlos Seresi*

**has successfully completed the course:**

# • R e l a p s e   P r e v e n t i o n •

*and is therefore honored this April 15, 2004.*

_____
A. Cooks
Psychologist Treatment Specialist

Cert. No.
04-014

M. Callis, Ph.D.
DAP/CODE Coordinaotr

# Certificate of Completion

## This Is to Certify That

*Juan Carlos Seresi*

## Has completed the program

## ● *Commitment to Change* ●

## at the Federal Penitentiary in Lompoc, California.

## Therefore is honored this April 6, 2004.

_____
A. Cooks,
*Physiologist Treatment Specialist*

_____
Dr. M. Callis, Ph.D.
*DAP /CODE Coordinator*



# Certificate of Achievement

*This certifies that:*

*Juan Carlos Peresi*

*has successfully completed the specialized course in:*

## Lotus 1-2-3 Version 2.2

*and is therefore honored this 27th day of August 1996.*

K. Towner, Instructor          VTC 030          L. J. Henderson, EPA

LITHO IN U.S.A.



# Certificate of Completion

**This Certifies That:**

*Juan Carlos Seresi*

*has successfully completed the specialized course in:*

## • CREATIVE WRITING III •

*and is therefore honored this 1st day of February 2000*

D. Clardy, Teacher

CW200010



# Certificate of Achievement

*This certifies that:*

*Juan Carlos Peresi*

*has successfully completed the specialized course in:*

## WordPerfect Desktop Publishing

*and is therefore honored this 27th day of August 1996.*

K. Towner, Instructor

VTC 020

L.J. Henderson, EPA

# Certificate of Completion

## This Is to Certify That

## **Juan Carlos Seresi**

Has completed the Eight -Weeks
"Criminal Lifestyle"
Program at the
United States Penitentiary
in Lompoc, California,
and is therefore honored this
7th day of August, 2003

Certificate Number 2003-111

A. R. Cooks
*Psychology Treatment Specialist*

Dr. M. Callis, Ph.D.
*DAP Coordinator*

# Certificate of Achievement

This Certifies That

## Juan C. Seresi

has satisfactorily completed

### Investing 2

Consisting of 20 hours of Adult Continuing Education From April 15th through June 23rd, 2007.
This certificate is hereby issued this 6th day of July, 2007.

**M. Chavez, Supervisor of Education**

**M. Inderbitzen, A.C.E. Coordinator**



# Certificate of Completion

### This Award Is Presented to

## Juan Carlos Seresi

Who has fulfilled all the requirements and is entitled
to all honors, rights, and privileges prescribed by the program

## Forbes Stock Market Course

In testimony whereof, this recognition achievement
is given this 28th of September, 2004.

P. Andrews,
*Adult Continuing Education Coordinator*

Cert. No.
04-012

R. Pacheco,
*Education Program Administrator*

# Certificate of Achievement

This Certifies That

## Juan Seresi

has satisfactorily completed

## Latin Art Culture

Consisting of 20 hours of Adult Continuing Education From October 14th through December 22nd , 2007. This certificate is here by issued this 8th day of January, 2008.

**Miguel Chavez, Supervisor of Education**

**Mr. Inderbitzen, ACE Coordinator**

# CERTIFICATE OF COMPLETION

**FCI-1 VICTORVILLE EDUCATION DEPARTMENT**

**Certifies that**

## JUAN CARLOS SERESI

**Has satisfactorily completed 10 participation hours**

**On this 29th day of February 2012 in**

## 20,000 LEAGUES UNDER THE SEA

**J. Vandiver, Adult Continuing Education Coordinator**

**M. Placker, Assistant Supervisor of Education**

© 2011 Masterpiece Studios, Inc.

# CERTIFICATE OF COMPLETION

## FCI-1 VICTORVILLE EDUCATION DEPARTMENT

**Certifies that**

# JUAN SERESI

**Has satisfactorily completed 10 participation hours**

**On this 30 day of March 2012 in**

# THE TIME MACHINE

J. Vandiver, Adult Continuing Education
Coordinator

M. Placker, Assistant Supervisor of Education

# CERTIFICATE OF COMPLETION

**Federal Correctional Complex**

**VICTORVILLE EDUCATION DEPARTMENT**

**Certifies that**

# Juan Carlos Seresi

**has satisfactorily completed 10 hours of coursework in**

## Literature - The Red Badge of Courage

February 28, 2013

_W. Young, A.C.E. Coordinator_

# CERTIFICATE OF COMPLETION

## FCI-1 VICTORVILLE EDUCATION DEPARTMENT

**Certifies that**

# JUAN SERESI

**Has satisfactorily completed 10 participation hours**

**On this 30th day of December 2011 in**

# IVANHOE

_____
J. Vandiver, Adult Continuing Education
Coordinator

_____
M. Placker, Assistant Supervisor of Education

# CERTIFICATE OF COMPLETION

## FCI-1 VICTORVILLE EDUCATION DEPARTMENT

Certifies that

# JUAN SERESI

Has satisfactorily completed 10 participation hours

On this 30th day of April 2012 in

# ROBINSON CRUSOE

J. Vandiver, Adult Continuing Education Coordinator

M. Placker, Assistant Supervisor of Education

# CERTIFICATE OF COMPLETION

### FCC VICTORVILLE EDUCATION DEPARTMENT

This certifies that

## Juan Carlos Seresi

has completed 10 hours of study in

### Stock Market II

Awarded at FCC Victorville, California

**March 31, 2010**

L. Lau, Teacher

# Certificate of Completion

## *FCI VICTORVILLE EDUCATION DEPARTMENT*
## *LITERACY PROGRAM*

*Certifies that*

# JUAN CARLOS SERESI

has completed

## STOCK MARKET I

January 2010

In recognition of outstanding commitment to academic pursuits

G. Schlottman
ACE Coordinator

# Certificate of Completion

This is to certify that:

## J.C. SERESI

**Has successfully completed the**

WALK/RUN PROGRAM LEVEL II



**Requiring** 100 **hours of Training**

**In Witness Thereof the Undersigned**

**Given this** 1ST **day of** September **,two thousand.**   09

_____ A. Pittman _____            _Fitness Coordinator_



# Certificate of Completion

## FCI VICTORVILLE EDUCATION DEPARTMENT
## LITERACY PROGRAM

*Certifies that*

# Juan Carlos Seresi

has completed

# Automotive Disc Brakes

for the Month of July, 2009

In recognition of outstanding commitment to academic pursuits

G. Schlottman
*Education Specialist*




# ⪦ Certificate of Achievement ⪧

### This certifies that
## *J.C. SEREST*

### has satisfactorily completed
## 50 & OVER FITNESS PROGRAM

### Consisting of __26__ Hours of Training

**This certificate is hereby issued this __3rd__ day of __September__ , 20 __09__**

_____A. Pittman_____

_____Fitness Coordinator_____






# Certificate of Achievement

**This certifies that**
Juan Carlos Seresi

**has satisfactorily completed**
**Disk Brakes**

**Consisting of** 10 **Hours of Training**

**This certificate is hereby issued this** 7 **day of** July **, 20** 09

G. Schlottman

# CERTIFICATE OF COMPLETION

This certificate is awarded

## J. SERESI

for participating and completing the
F.C.I. I Victorville Recreation Department's
50 & Over Exercise Class. Congratulations
on your efforts and dedication in completing this course.
June 23, 2009.



A. Pittman, Sports Specialist

     



# Certificate of Completion

### FCI VICTORVILLE EDUCATION DEPARTMENT
### LITERACY PROGRAM

*Certifies that*

# JUAN CARLOS SERESI

has completed

# HOW TO START A PEST CONTROL BUSINESS

for the Month of September 30, 2009

In recognition of outstanding commitment to academic pursuits



G. Schlottman
*ACE Coordinator*

# Certificate of Completion

## FCI VICTORVILLE EDUCATION DEPARTMENT
## LITERACY PROGRAM

*Certifies that*

# JUAN C. SERISI

has completed

# AUTOMOTIVE ELECTRONICS

for the Month of September 27, 2009

In recognition of outstanding commitment to academic pursuits

*G. Schlottman*
*ACE Coordinator*

# Certificate of Accomplishment

## This is to certify that

## **Juan Seresi**

has successfully completed the **Parenting From A Distance Program**

The Federal Correctional Institution I, Victorville, CA

September 2009

K. Brown, Education Specialist

# Certificate of Participation

## F.C.I. #1  Victorville, California

## UNIT TEAM

This certifies that

## JUAN SERESI

Has Completed: PUBLIC SPEAKING COURSE

## SEPTEMBER 2009

**Charles R. Carter, Correctional**
**Counselor,  FCC Victorville**



# FCI MENDOTA

## Beginning Chess

THIS CERTIFIES THAT

# Juan Seresi

Has successfully completed all requirements pertaining

to the course of instruction in Beginning Chess

Given this 19th day of August, 2014

K. R. Jones
Supervisor of Recreation



# FCI MENDOTA

## Advance Chess

THIS CERTIFIES THAT

# Juan Seresi

Has successfully completed all requirements pertaining

to the course of instruction in Advance Chess

Given this 27th day of December, 2014

K. R. Jones
Supervisor of Recreation

# CERTIFICATE OF COMPLETION

**Federal Correctional Complex**

**VICTORVILLE EDUCATION DEPARTMENT**

**certifies that**

# Juan Seresi

has satisfactorily completed **10** hours of coursework in the

## A.C.E Typing Program

January 21, 2014

*F. Ansari Program Coordinator*

# FCI MENDOTA

## Health, Nutrition & Exercise

THIS CERTIFIES THAT

# Seresi, J.

Has successfully completed all requirements
pertaining to the course of instruction in
Health and Nutrition for the Recreation Department.
Given this 2nd day of April, 2015

_____

E. Davila, Recreation Specialist

# *Certificate of Completion*

*FCI Mendota Education Department*

*Certifies that*

## *SERESI, JUAN*

*Has successfully completed the following program*

## *ACE Thinking on Your Feet*

*This certificate is hereby issued on the 19th day of June, 2015*

*Training Instructor*

# FCI MENDOTA

## Health Conscious Class

### THIS CERTIFIES THAT

# Seresi

Has successfully completed all requirements
pertaining to the course of instruction in
Health Conscious Class for the Recreation Department.
Given this 18th day of March, 2015

E. Davila, Recreation Specialist

# FCI MENDOTA

## Health Fair

### THIS CERTIFIES THAT

# Seresi

Has successfully attended and participated in the Recreation
Department Health Fair.
Given this 23rd day of March, 2015

E. Davila, Recreation Specialist

# Certificate of Completion

## Is Awarded To:

## Juan Carlos Seresi

who has fulfilled all the requirements and is entitled
to all honors, rights and privileges  prescribed by the program

## • Legal Research •

In testimony whereof, the recognition of achievement is given
this 29 day of April, 2002



_____
M. Stephenson, Instructor

_____
M. Brown, ASOE

AWARD OF EXCELLENCE

# Merced College

## *Micro-Soft Office Computer Application Training*

**Certificate of Achievement**

## *Juan C. Seresi*

Has Successfully Completed 102-Hours of Computer Application Training
As Listed on Reverse Side of Certificate





Dr. John Spevak
**Vice President of Instruction**

**Issued By: Merced Community College**
**September 22, 2007**

# EXHIBIT 4

September 9, 2020

To the Honorable Judge Wilson:

I write this letter to you today and cannot abandon my sense of hope that we will receive a different outcome then we have thus far. My father is Juan Carlos Seresi and he has been incarcerated for over 33 years and his case has been before you for approximately five years. I realize that you are in a difficult position and must weigh many factors when it comes to the decisions you make. The right decision in this case is to let this man be free.

I write this letter to you on behalf of a family that is fully in support of my father. My dad has a wife,  three grown children and their spouses, eight grandchildren plus step-grandchildren, a sister, and nieces and nephews who are willing and able to support him if he is to be released. This is evident in the numerous letters that we included in his previous Compassionate Release Petition and what those letters state is still true today. We love my father and have never stopped supporting him during the time he has been incarcerated. We continue to remain in constant communication with him and visit him as often as possible. As a family (both immediate and extended), we stand behind him and ask that you grant him this Compassionate Release.

My father is an exceptional man. He is human and he has always learned from his mistakes to become a better person. The person he is today is a consequence of his complete refusal to let his life circumstances change who he is. After over three decades of being in BOP system, he remains committed to always broadening his mind and maintaining a positive outlook on life. His faith in God is unshakeable.

My father is a very unique person. Although he has been incarcerated for so many years, he is not bitter or resentful. He still has a very positive outlook on life and is always reminding his children that we have to look at the positive things rather than the negative. He is kind and compassionate, intelligent and thoughtful. He has always been motivated to improve himself, even in an utterly sad situation facing a 505-year sentence. During his incarceration, he has been a model inmate. He has received three Associate Degrees while incarcerated and has countless certificates of classes he has completed. He has taken any and every class that he has been able to take advantage of during his incarceration. I don't know that there are many people that would have done the same had they been in his place.

If my dad is granted this Compassionate Release, he will absolutely be welcomed into my home with my family. Our entire family lives very close to each other and we are a constant support system for each another and this situation will be no different. Not a day goes by that I don't wish that things had been different for him and my family. Although it is not possible to change the past, we can only hope that he has some kind of future with us.

My dad is now 73 years old. Sadly, he has missed my entire life and the lives of my sister and brother. We have grown up without him and he has only been able to imagine being present at

all the milestones of our lives. Graduations, weddings, the birth of all of our children, and the deaths of loved ones including two of his own sisters. Imagine all the important moments that happen in a person's life (and the not so important ones). He has missed them all.

What does it take for someone to be given a second chance in this judicial system? Who deserves it? I say my father deserves that second chance. He has held on to the hope for over three decades that the injustice of his sentence will be corrected one day. The cruel and unusual length of his sentence is an outrage. What is in the past cannot be undone but this petition is a way to give him a chance at the relief he deserves. My father has endured more than most people have and has always held on to his dignity and his humanity. He continues to believe that there are good people in this world. I sincerely hope that you can see that my father is a human being that deserves to be given a second chance at life. On behalf of my family and myself, I ask that you please consider granting his Compassionate Release Petition.

Sincerely,

Patricia Mawer

# EXHIBIT 5

November 13, 2016

Dear President Obama,

My name is Ricardo Seresi and I am the son of Juan Carlos Seresi. My father has served 27 years of a 505 year sentence. I first must tell you my father is not a career criminal. In fact, this case is his first and only offense. My father was a hands-on dad and was always doing things for his family. Whether it was for sports, schoolwork, or just fun family activities he made sure to always be present. My father was always ready to help my sisters and myself with whatever we needed. If it was schoolwork, our fears, or just advice he always knew what to say to fix the problem. Over the past 28 years my father has been incarcerated and this has not changed. What did change was that he was no longer there for the day to day struggles of life his family would endure.

Most men would have given up on life. My father fought hard to achieve great things while incarcerated. This includes many degrees and finishing many academic courses. He has never had a disciplinary write-up in 27 years of being an inmate, nor any disciplinary actions for that matter. Many would consider him to be the model inmate. I am sure you get many of these letters of people telling you how great of a person their loved one is. However, Your Honor, in my father's case this is true.

My father raised my sisters and me from behind bars being involved in every decision our family made and he is very much the rock of our ever growing family. The three of us have all grown up to be great adults, parents, and spouses. My father has 10 grandchildren and all 10 know who 'Papa' is and love him so very much. I was once a 10 year old boy who needed his father. I am now a grown man who still needs and wants his father home. Over the past 27 years my mom, sisters, and I have had to deal with this. Our children have now had to as well.

If my father is released, he will be living with my oldest sister and her family. I own a business (a cellular phone repair store) and fully expect to be able to employ my father once he is released. Our family is committed to help him get established once again if he is released. He will also contribute to our families by assisting with childcare of his grandchildren and generally helping with family responsibilities.

I am respectfully requesting that you please let my father come home so his family finally has him at home where he belongs. He has served his time and my only fear is that his grandchildren will not have a chance to see the greatness my father has to offer. We have been waiting for this for almost 3 decades now and just hope the end is near. Thank you for taking time to read my letter and hopefully this helps you to see that my father is the type of person that should be home with his family. Please send our Papa home!!! Thank you for your time.

Sincerely,

Ricardo D Seresi

November 13, 2016

Dear President Obama,

My name is Maria T. Seresi and I am the wife of Juan Carlos Seresi. We have been married for 44 years. I am writing this letter to ask for clemency on his behalf. I ask this not only for his life, but for the life of his family who loves him dearly.

He has three grown children and ten grandchildren who love him very much and want him to be able to be a part of their lives. The fact that after all these years his family has not given up on him and still endures great suffering over this situation speaks volumes on his behalf and the type of person he is. He is a decent man, who never had anything on his record before this situation happened. There was no violence, drugs, or weapons involved in his case. The day that he was sentenced, his entire family was sentenced along with him.

I think that he has more than paid for his mistakes. He deserves to be able to enjoy what's left of his life with his family. He has missed all the family events you can imagine- his children's weddings, births of his grandchildren, graduations, family weddings and celebrations. Not only have his children suffered but now his grandchildren feel the loss of their grandfather not being physically in their lives.

What happened to him and our family has been like a wound that never healed and it will not heal until this is over. The impact this situation had on my life was catastrophic. The pain I felt watching our children suffer is something that I can't put into words.

Juan Carlos is not a career criminal and will never do anything to break the law if he is released. All he wants is to be able to spend time with his family. He is 69 years old and wants to enjoy whatever time he has left with his kids, grandchildren, and his extended family who are waiting for him. He wants to try to make up for lost time the best he can. If he is released, he will be living with our oldest daughter and working for our son who owns his a business. He will be very involved in helping take care of his grandchildren.

His sentence was such an injustice that still leaves us perplexed. Why was there such a discrepancy in his sentence and the sentences imposed by Judge Consuelo Marshall? Why was the fact that Juan Carlos turned himself in never taken into consideration? What about the fact that he had no prior record? I suppose those are issues of the past but things that still haunt us today.

I am asking that you please grant Juan Carlos clemency in this matter. If not just for his sake, but also for the sake of his family who is ready to support him in all ways possible to put an end to this situation. We hope that our prayers will be answered in the form of his freedom.


Sincerely,

Maria T. Seresi

PS I have attached a childhood essay that my daughter Patricia wrote. I have kept it all these years even though it is so heartbreaking for me to read it. It has always demonstrated the pain that my children felt and continue to feel about their father. Hopefully, they can begin to fell joy again with his release.

will be okay makes me keep pushing myself to not give up. She has been been strong whnen everyone thoughtshe would crumble. She has become st strong for us for we depend on her for everything.My mother motivates us all to believe and good things will happen.

If there is a Santa Clause out there, may he here my wish for it is only one.


I don't know if I believe in Santa Clause. Is he make believe or is he real? He's probably a figment of imagination. But why does someo one who doesn't exist have so many followers? Is his power so graet th that at this special time of year he spreads good cheer throughout the land? I guess it 's all a matter of opinion. But if there is a Santa C Clause out there  may he hear my wish for it is only one. Bring daddy home.

Santa
Please bring
my
daddy
home.

people fill the streets.

Bishop Alemany HighSchool
Bishop Alemany High School
Evil Elves Enterprises
Mission Hills, California

Every where you look yu see the Xmas spirit.

There are christmas trrees everywhere you look. Heavenly angels

→mistletoe is found above every door.

adorn every light pole. The sttreets are filled with happy people as

Crowds of

they purchase their gifts. Yes it is Christmas time once again. This i

all

everyone's favorite time of the year. The malls are jammed packed and

crowds of

yet you don't quite mind walking through the mobs os people all there

located on

for the same reason you are. There are Santas ox every strreet corner

greeting  everyone as they stroll by. It is a time to share with your

w/happiness

family and cherish the precious moments you share during the holiday s

season.

    Christmas is the most memorable time of the year for people of al

at

ages. I think everyone has certain can think of just eneat least one

touched them in a special way

Christmeas which has been special to them for one reason or another, g

good or bad. I remember the when I was seven I . I remember when I wa

seven Christmas meant only one thing to me- gifts, gifts, and more gif--_

Pic N' Save

I wanted to get evryone I knew a Christmas gift because I was sure I/w

woiuld get one in return. My mother sent me off to pick and save ,

clenched in my hand, and I→

with five dollars in my ha-d and I thought I was on top of the world.

(This thoery of "Give a-d you shall receive" ended quickly when I didn

receive as many gifts as aI  thought I would.)

Yet I remember when I spent Christmas in the hospital was

    I don't really remember when I discovered there was is no Santa C

eleven

Clause. I must have been about nine. I never really wanted to

therefore,

believe it and I always told my friends " There is a Santa , I swear".

November 13, 2016


Dear President Obama,


My name is Daniel Mawer and Juan Carlos Seresi is my father-in-law. I am married to his eldest daughter, Patricia Seresi Mawer. I have been a part of his family since about Nov. 1991. I have only known him while he has been incarcerated and I have witnessed throughout the years the type of relationship he has with his family. I can tell you that I have been around long enough to see how much his children and grandchildren love him. I have never heard anything but great things from his children, nieces, and nephews about their childhood. They all have great stories of how loving and fun he was to be around.

Being married to his eldest daughter has brought about its challenges. I have experienced with her the ups and downs of her father being incarcerated. You can only imagine the stress of living with this weight on your shoulders and the issues that it presents not only for my wife but for me also. They talk almost every night on the phone and she visits him whenever possible. I have never stood in the way of her continuing their relationship during these terrible times. I have seen how this has caused times of difficulty in her family. I have seen the depression that my wife and her family have gone through while dealing with their father being incarcerated. I have been a part of the times when moves have had to happen, money has been short, and have seen the difficulty of just having a father physically unable to be around. I have seen the effects on their family while Juan Carlos has been incarcerated.

But, I also see how much love and hope his family has for him. My wife has always shown her unconditional love for him. He talks to his children and grandchildren on the phone almost every night. During visits I see the strong bond he still has with his children and now his grandchildren. If he is released, he will be welcome to live in our home. I know that he will be a contributing member of the family by helping with childcare and household responsibilities. We would be so happy to have him live with us as he begins his life again. I would love to see that father-daughter bond grow between my wife and her father as she has imagined. I would also love to see my relationship and my son's relationship grow with his grandfather. It would be amazing to see this family back together again and to move forward and leave this chapter in our lives behind us.


Sincerely,

Daniel Mawer

November 13, 2016

Dear President Obama,

My name is Cristina Stein and I am the middle child of Juan Carlos Seresi. I've been trying to figure out what to write and where to start. This really shouldn't be so difficult. It's practically my whole life that I am writing about. I was eleven years old when this occurred and it completely flipped my world upside down! Prior to this, our family was perfect, at least in my eyes. My parents got along great, they were always there for us, we never wanted for anything, we spoke two languages, attended a Spanish school on Saturdays, we played sports, we got good grades, enjoyed family vacations and loved spending Sunday in the pool while Dad was grilling on the BBQ, We could count on everything being exactly the way it was supposed to be, until it wasn't!

When all of this occurred 27 years ago, it completely devastated our family. We were a very close family that spent an incredible amount of time together. None of us were ever the same after this happened. Although my sister, my brother and I did our best to be positive and successful members of society, this was a continuous weight we carried around. We are the good people we are today because of the solid foundation that both our parents instilled in us from the time we were born. Growing up in my dad's absence was a huge void- not only for us but now for his grandchildren. They have only had the opportunity to know their Grandfather in a visiting room and through very short phone conversations. But because my Dad has always been such an important figure in our lives we made the very difficult decision to take our children into an environment that we would otherwise never have them in. I don't regret my decision to take them, my children love their Papa very much and want nothing more to have him home and spend real quality time with him.

My dad has missed so much in our lives I wouldn't even know where to start...of course there are all of the holidays, birthdays, graduations, weddings, the births of all his grandchildren. But those things are all big things. He's also missed all the daily things and the small things we all take for granted: having a family meal together, going to church as a family, looking up into the stands at one of your games and seeing both parents looking back, teaching your kids how to drive, attending a father-daughter dance, helping with homework and just being a part of our everyday lives. My dad has always been a great dad, no matter what. He has always been supportive and understanding, encouraging and motivating never forgetting his role as our father.

In the 27 years my Dad has been incarcerated, he has been a model inmate, using his time taking countless classes and earning several degrees and being a role model for other inmates. My dad has long ago paid for what he has done and deserves to come home to his family. He should be able to be a real part of all our lives. He has missed so much but could still be a part of so much, he can't ever get back the time and things he has missed, but to able to be part of the present and future is priceless.

This changed our lives in a million different ways. But one thing it could not change is the bond we all have. After all these years our family has never lost hope that one day this nightmare would come to an end and we could start to put this all behind us.

Sincerely,

Cristina Stein

November 13, 2016

Dear President Obama,

My name is Shawn Stein. I am writing to you in regards to my father-in-law, Juan Carlos Seresi. I have been married to his daughter, Cristina, for 13 years. We have four children together. I also have three other children, two of which Cristina raised from the ages of six and seven.

When I talk to my father-in-law over the phone about his grandchildren and about how much his own daughter has grown and become a wonderful wife and mother. The joy in his voice is undeniable. He has missed so much time with his children, grandchildren and the entire family, that it would be a true blessing to see this all come to an end.

As a father, it hurts me to see my children miss their grandfather and cry when they have to leave their visit and can't understand why "Papa can't come home with us". I can't imagine the pain he goes through when he has to watch them all leave and he has to stay. Time continues to go by and memories are being made without him. I hope that one day soon he'll be a part of those memories.

Throughout the years I have seen the pain this has caused and the emptiness the family feels without my father-in-law. Too many birthdays, anniversaries, baptisms, weddings and holidays have happened without him. I would love to see an end to this part of all of our lives so that we can move on to happier times together.

Sincerely,

Shawn Stein

November 13, 2016


Dear President Obama,


I am writing this letter on behalf of Juan Carlos Seresi. He is my father-in-law and grandfather ("Papa") to my children. He is such an overall amazing grandfather, father, and man. From the first moment we spoke over the telephone until this very day, he has always been a genuine, kind, and positive man towards me. I have watched and heard him give positive guidance to his son. He has always said to me that I am not just his daughter-in-law, but that he considers me one of his own daughters.

His time away from our family has affected the everyday journeys, obstacles, joys, and stages in our lives. We constantly wish "Papa" was here with us to share in it all. Having our children spend time with him in person or on the telephone are such special moments that we don't take for granted. He constantly makes it a point to stay in contact with us all, be it with weekly visits, daily phone calls, and emails. He is consistent in being a part of all our lives and is always willing to hear us, help us, guide us, and advise us just as most great fathers and grandfathers do.

On weekends when the grandchildren have baseball games, he calls to speak with them about their games. He is constantly telling them how proud he is of them and to make sure they learn and have as much fun as possible. The children look forward to telling and sharing their special moments with him, even if it is over the telephone. I am sure he is just as excited to hear them speak of their accomplishments and achievements.

He and his children have missed so many special occasions, achievements, and accomplishments for so many years now.  Our only hope is that the grandchildren, his adult children and their spouses can celebrate in many occasions to come together with him. This man I speak of certainly deserves and belongs at home with his family that needs and loves him so very much. We are a faithful, close, and hopeful family waiting for our "Papa" to come home and enjoy all that life has to offer together.

Sincerely,

Gaby Seresi
(Wife of Ricardo D. Seresi)

November 13, 2016

Dear President Obama,

My name is Maria Ester Saini and I am the third sister of Juan Carlos Seresi. Our family consisted of my father, mother, three sisters, and the son (Juan Carlos). We all finished high school in Argentina and had a very happy upbringing with much happiness.

Juan Carlos is a very loved and respected person by everyone. He loves reading and studying. He is a good father, brother, uncle, grandfather, and father. He has so many good qualities but I don't want to focus on that completely. I would like to emphasize in particular one thought: if at any time he took a misstep in his life it was in the circumstances regarding this situation. He is a human being that has paid his price to society for any mistakes he has made.

For this reason, with faith, optimism, and hope I ask for his clemency.

We, as an entire family, are waiting for him to come home so that we may help him readjust to his new life.

With all my heart, these are my wishes.

Sincerely,

Maria Ester Saini

[Translated from Spanish to English. Original Spanish version is attached.]

A quien CORRESPONDA:

Mi nombre es MARIA Ester SAINI, soy
la tercer hermana de Juan Carlos SERESI.
Nuestra familia. estaba compuesta por mi Padre,
Madre, tres mujeres y el VARON (Juan Carlos).
los cuatros cursamos los estudios Secundarios
tuvimos una niñez y adolecencia muy Feliz.

Juan CARLOS es una PERSONA muy querida. y
Respetada por todos, amante a la lectura, estudios,
Buen Padre, HERMANO, Tio, Abuelo y Amigo, Son
muchas sus cualidades, Pero no deseo profundizar
en eso. Solo quiero enfatizar, que si en algún
momento de su vida tropezó. Fueron las circunstancias
nada más. Es un Ser humano, que ya pagó su
cuota con la sociedad.

Por eso con Fé, optimismo y Buenos deseos
pido por su clemencia.

Aquí estamos toda su familia, Esperandolo
para ayudarlo a Reincorporarse a su Nueva Vida.

Con todo mi Corazón, son mis deseos.

Atte: Maria Ester Saini

November 13, 2016

Dear President Obama,

My name is John Saini.  Juan Carlos Seresi is my uncle. My mom (Maria) is Juan Carlos's sister. I am writing this letter with the hopes and dreams of ending a nightmare. When my uncle turned himself in to the authorities I was in the 7th grade. I am now 40 years old, married, college graduate with a degree in Kinesiology and employed by the LAUSD as an Adapted Physical Education teacher.  I state these facts to demonstrate the positive support and family waiting for him to come home.

Initially, I planned to describe my deep pain and emotional anguish I battled as young man having no adult male figure to confide in since my father was also arrested. My father has since passed. Instead, I would like to tell you about a man and a family.  My uncle is a true family man that is dedicated to his children and family. Growing up, all the kids played Pony League Baseball and Pop Warner Football.  He taught me to pitch and field ground balls. When we struggled with school, we were hired tutors (English was a second language for us). Education was very important and a priority. Our families were extremely close and we did everything together: vacations, holidays, birthdays and of course the 4th of July. I remember my uncle and my father telling us that we were" Yankees" and that the 4th was our Independence Day. During those gathering I never saw my uncle intoxicated or sloppy although wine was always on the table. My uncle is a good man (I am sure his record as an inmate will reflect this assertion) that made a mistake and has over paid for any wrongs he has committed to society.

My Uncle's release would close a very dark and exhausting chapter in our family's legacy. Personally, I need to see him free to start the process of healing spiritually and emotionally. Recently, I started imagining and dreaming seeing him free and it gives me hope. I just had my first child- a son born on August 24th of this year- and I would love to share that miracle with my Godfather.  I love him and miss him.


Sincerely,

John Saini

November 13, 2016

Dear President Obama,

My name is Valerie Stein, and I am one of the many grandchildren that Juan Carlos Seresi doesn't have the privilege to see on a daily basis. I am 22 years old and looking back on my childhood I see that my grandfather has missed so many things. It's a given that he has missed out on so many important years of my mother's and my aunt and uncle's lives. To see that he has missed out on my life and my siblings' lives as well is heartbreaking. There are so many birthdays, holidays, weddings, childbirths, family gatherings, and so many more events where we have made countless memories. But on these days, the only experience my grandfather gets is to hear our voices over the phone. As I grow older I understand more about the relationship we have with my grandfather. I now I have four little siblings who don't understand why they can't see their "Papa" every day, when they want to, like they get to see everyone else in the family. I hate to see my younger siblings having to go through so many milestones in their lives without having our grandfather here to see it in person and experience these memories by their side.

My grandfather, Juan Carlos, has missed so many moments in so many lives, but it's not too late for him to be here for the moments he hasn't missed. To see my siblings graduate school, to join in on a family gathering, to experience Thanksgiving and Christmas with the whole family, and to finally be in a family photo instead of seeing pictures without him in them. I hope that one day soon we'll be able to welcome my grandfather home, and get to enjoy the rest of our lives with the family member that has missed too much already.

Sincerely,

Valerie Stein

November 13, 2016

Dear President Obama,

My name is Tristan Stein. I am 14 years old and I am the oldest grandson of Juan Carlos Seresi. No matter where my grandfather is, I'm still very grateful to have him.  Even though I only get to talk to him over the phone, I can hear the happiness in his voice when he gets to talk to us.  Whenever I visit my grandfather I see his eyes light up all the time because we are there to see him.

My younger siblings don't understand yet where we are when we visit and I hope this will all be over before they do and we can spend time with our Papa in a normal way.  Every year that goes by we get older and that's another year he misses out on our lives, like a first homerun, and my first day of high school.  My grandfather is a special part of my life and all of his grandchildren's lives, and we hope to have him home soon.

Sincerely,

Tristan Stein